**Chris ROBERTSON, Appellant**

v.

**Bradley ODOM, Joe Barnes, and Sandion, Ltd. d/b/a Coldwell Banker United, Realtors, Appellees.**

No. 14–07–00791–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 30, 2009.

Hugh J. Plummer, Scott Rothenberg, Houston, TX, for appellants.

Angela Olalde, League City, TX, Eric Joseph Kirkpatrick, John A. Buckley, Galveston, TX, Jon Miller, Bryan, TX, for appellees.

Panel consists of Justices YATES, GUZMAN, and SULLIVAN.

## OPINION

KENT C. SULLIVAN, Justice.

Appellant, Chris Robertson, purchased a townhouse in which the replacement stucco exterior had been improperly installed. After discovering that water was penetrating into the interior of the townhouse, Robertson sued the seller of the townhouse, appellee Bradley Odom, and Odom's realtor, appellee Joe Barnes. He alleged, among other things, fraud and violations of the Texas Deceptive Trade Practices Act ("DTPA") arising from representations Odom and Barnes made to him during the sale of the townhouse, and contended that Barnes's liability should be imputed to Odom under the legal theories of agency and *respondeat superior.*

Following the presentation of Robertson's evidence at trial, the trial court granted a partial instructed verdict as to some of Robertson's direct-liability claims against Odom. The jury then found in the defendants' favor on all six remaining legal theories that were submitted at Robertson's request, and also found that Robertson and the stucco installer were solely responsible for Robertson's damages. On appeal, Robertson contends in four issues that the trial court improperly granted a partial directed verdict to Odom and that the evidence is factually insufficient to support the jury's verdict. We affirm.

## BACKGROUND

The townhouse, which is part of a three-unit townhouse complex located in the Montrose neighborhood of Houston, was initially built with a synthetic stucco exterior. In 2002, the townhouse owners, Odom included, hired Savenok Construction, Inc. ("Savenok") to remove the syn-

thetic stucco and install a "hard-coat" stucco exterior. This process is commonly referred to as a "stucco reclad."

On April 7, 2002, during the reclad process, a rainstorm hit Houston. At that point, Savenok had removed the synthetic stucco but had not yet installed the new hard-coat exterior. To guard against potential water intrusion during the reclad, Savenok had placed a rainwater diverter and plastic barricade over the exposed portion of the townhouses. However, the diverter failed and water entered the townhouse, causing damage to the cabinets, kitchen sink, sheetrock, and bathroom fixtures. Odom repaired these damaged items and took additional precautions to prevent mold growth. Savenok completed the stucco reclad; however, unbeknownst to Odom, the new hardcoat stucco contained several latent installation defects that would later permit water to penetrate into the interior of the townhouse.

In 2003, Odom relocated to Dallas. He hired Joe Barnes, a realtor with Coldwell Banker United Realtors, to list the townhouse for sale. Odom prepared a Seller's Disclosure Notice, as mandated by law,[1] in which he represented that he was unaware of "Other Structural Repairs" to the property, because he reasoned that the April 2002 rainstorm repairs were not "structural" in nature. In this appeal, two of Robertson's issues deal with that representation.

Robertson's other two appellate issues arise from a remark uttered by the realtor, Barnes, about the stucco exterior. Robertson was interested in purchasing the townhouse but had questions about the stucco. Barnes informed him that the original synthetic stucco had been replaced by hard-coat stucco, which was "better than new." Robertson contends this was an actionable representation and that Odom, the seller, can and should be held vicariously liable for Barnes's statement.

On another occasion before the sale was complete, a construction worker made the following disparaging remarks about the stucco to Robertson and his realtor, Janie Morris: "[H]e just said directly to both of us, 'You don't want to buy this townhouse. It's—has all kinds of problems. They're junk ... the stucco is all a mess[.]' ... [The worker] had indicated that there was a big problem with the stucco." In response, Robertson instructed his retained property inspector to carefully examine the stucco. The inspector reported no problems with the stucco. Robertson ultimately purchased the townhouse.

Unfortunately, as a result of Savenok's improper installation, the newly installed hard-coat stucco exterior contained several latent installation defects, including (1) in several locations, control joints were either missing or had been improperly installed, (2) flashing, which helps prevent water penetration, had not been installed, and (3) the stucco finish was cracked. Because of these defects, Robertson later discovered that water was penetrating through the stucco into the interior walls of the townhouse, causing significant damage. Both sides' experts agreed that these defects would be apparent only to those with a "trained eye" and would not have been obvious to any of the parties.

Robertson sued Odom, Barnes, and Coldwell Banker, accusing them of negligence, negligent misrepresentation, breach of contract, breach of warranty, commonlaw fraud, statutory fraud, and multiple violations of the DTPA. He also alleged that Odom was vicariously liable for Barnes's misrepresentation under the legal

---

1. *See* Tex. Prop.Code Ann. § 5.008 (Vernon Supp. 2008).

theories of agency and *respondeat superior*. In response, the defendants contended that Robertson was contributorily negligent, and they also designated Savenok, among others, as a responsible third party.

The case proceeded to trial in April 2007. Following the presentation of Robertson's evidence, Odom moved for directed verdict on all direct-liability claims. Robertson conceded that Odom did not violate DTPA sections 17.46(b)(6) and 17.46(b)(7), prompting the trial court to grant a directed verdict to Odom on those grounds, among others.[2] The trial court then submitted the remaining direct-liability causes of action to the jury in a twenty-question charge. Robertson did not request a jury submission on agency, *respondeat superior*, or Odom's vicarious liability for Barnes's conduct.

The jury found as follows:

1. Barnes did not violate "laundry list" items (5), (7), or (24) of DTPA section 17.46(b);[3]

2. Odom also did not violate section 17.46(b)(24);

3. Neither Barnes nor Odom engaged in unconscionable conduct under DTPA section 17.50(a)(3);[4]

4. Neither Odom nor Barnes committed statutory fraud against Robertson;

5. Neither Odom nor Barnes committed common-law fraud against Robertson;

6. Savenok's negligence was a proximate cause of Robertson's damages;

7. Robertson's negligence was also a proximate cause of his own damages; and

8. Savenok and Robertson were each fifty percent responsible for causing Robertson's damages.

The trial court ultimately entered a take-nothing judgment from which Robertson appeals, bringing four issues. Generally, he contends in his first three issues that the trial court improperly granted a directed verdict as to (1) the vicarious-liability allegations against Odom arising from DTPA sections 17.46(b)(6) and 17.46(b)(7); and (2) Odom's *direct* liability under section 17.46(b)(6). Then, in his fourth issue, Robertson claims that the evidence is factually insufficient to support the jury's finding that Odom and Barnes did not violate the DTPA by failing to disclose the April 2002 rainstorm repairs, which he describes as "structural repairs."

---

2. The trial court also granted a partial directed verdict as to other direct-liability claims against Odom, including negligence, that were time-barred by the statute of limitations. Robertson has not challenged that limitations ruling on appeal.

3. Generally, the DTPA permits consumers to sue a person who uses a "false, misleading or deceptive act or practice" specifically enumerated in section 17.46(b) of the DTPA. *See* Tex. Bus. & Comm.Code Ann. § 17.50(a)(1)(A) (Vernon Supp. 2008). That section, which presently describes twenty-seven such categories of actionable conduct, is commonly referred to as the "laundry list." *See Mays v. Pierce*, 203 S.W.3d 564, 571 n. 12 (Tex.App.-Houston [14th Dist.] 2006, pet. denied); *Ortiz v. Collins*, 203 S.W.3d 414, 426

(Tex.App.-Houston [14th Dist.] 2006, no pet.). Here, the jury was asked whether Barnes (1) represented that the townhouse had characteristics that it did not actually have; (2) represented that the townhouse was of a particular quality if it was another; or (3) failed to disclose known information about the townhouse with the intent to induce Robertson to purchase a townhouse he otherwise would not have purchased. *See generally* Tex. Bus. & Comm.Code Ann. § 17.46(b)(5), (7), (24) (Vernon Supp. 2008).

4. A claim for unconscionable conduct under section 17.50(a)(3) is distinct from a violation of the section 17.46(b) laundry list. *See Mays*, 203 S.W.3d at 571 n. 12; *Ortiz*, 203 S.W.3d at 426.

ANALYSIS

Appellant's second and fourth issues turn upon the same legal question—whether the defendants failed to disclose previous "structural" repairs—and therefore we address them together. In addition, we will group his first and third issues for resolution, because both involve Odom's alleged vicarious liability for Barnes's "better than new" representation.

## A. Evidence of "Structural Repairs" to the Property

In Robertson's second issue, he contends directed verdict was inappropriate because he produced more than a scintilla of evidence that, by representing that the townhouse did not have previous structural repairs, Odom violated DTPA section 17.46(b)(7). His fourth issue is similar. There, Robertson argues that the overwhelming weight of the evidence showed previous structural repairs that were not disclosed; thus, he concludes that the evidence is factually insufficient to support the jury's finding that Odom and Barnes did not violate the DTPA.

Both of Robertson's arguments presume that the term "structural repairs," as used in the Seller's Disclosure Notice and derived from section 5.008 of the Texas Property Code, encompasses Odom's April 2002 repairs to the cabinets, kitchen sink, sheetrock, and bathroom fixtures. However, we hold that, in this statutory context, the term "structural repairs" denotes work performed on the load-bearing portions of a residence. Because Robertson produced no evidence of undisclosed repairs to the load-bearing sections of the townhouse, we will overrule his second and fourth issues.

### 1. Standard of Review—Directed Verdict

A trial court may properly grant a directed verdict if no evidence of probative force raises a material fact issue. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000). We review a directed verdict under the same standard of review as a legal sufficiency, or no-evidence, challenge. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005). Thus, a directed verdict for a defendant may be appropriate if the plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery. *See Cherqui v. Westheimer Street Festival Corp.*, 116 S.W.3d 337, 343 (Tex.App.-Houston [14th Dist.] 2003, no pet.). We will consider the evidence in the light most favorable to the party against whom the verdict was directed, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *See AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 667 (Tex.App.-Houston [14th Dist.] 2007, pet. denied).

### 2. Standard of Review—Factual Sufficiency

In a factual sufficiency review, we must consider and weigh all of the evidence both supporting and contradicting the finding in question. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). We may set aside the jury's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001). We may not pass upon the credibility of the witnesses, or substitute our judgment for the jury's, even if the evidence could support a different result. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998). The amount of evidence necessary to affirm a judgment is far less than that needed to reverse it. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Thus, when we reverse a judg-

ment for factual insufficiency, we must outline the evidence pertinent to the issue and explain how the contrary evidence greatly outweighs the evidence favoring the judgment, but we need not do so when affirming the jury's verdict. *Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex.2006); *Ellis*, 971 S.W.2d at 407.

### 3. Evidence of "Structural Repairs"

■ Odom, as a seller of residential real estate, was legally required to disclose, in writing, certain facts about his knowledge of the townhouse's condition to Robertson, the buyer of the property. *See* Tex. Prop. Code Ann. § 5.008(a) (Vernon Supp. 2008). In fact, the Property Code identifies the minimum disclosures that must be made, and requires that the written notice be in a form "substantially similar" to that provided in the statute. *See id.* § 5.008(b).

Here, Odom completed a "Seller's Disclosure Notice" form that was apparently promulgated by the Texas Association of Realtors.[5] He indicated that he was unaware of previous "structural repairs," including foundation repairs, roof repairs, or "other structural repairs." According to Robertson, that affirmative denial violated the DTPA, which prohibits representations "that goods or services are of a particular standard, quality, or grade . . . if they are of another." Tex. Bus. & Comm.Code Ann. § 17.46(b)(7). In his brief, Robertson argues that the repairs that followed the 2002 rainstorm should have been disclosed as "other structural repairs":

> [T]he representation by Odom that he was not aware of any "other structural repairs" was not entirely accurate. On April 7, 2002 . . . a significant amount of heavy rain poured into the exposed portion of the townhouse. The sheetrock

behind the kitchen cabinets, the kitchen sink, and the bathroom fixtures all were damaged by the incursion of rainwater. . . .

> As a result of the rainwater incursion, Odom had to have a substantial amount of sheetrock torn out, and a mold and mildew killing agent sprayed throughout the area of the townhouse that had gotten wet. . . .

> . . . .

> The total cost of the remedial work that was to be done after the rain incursion in the townhouse was $81,420. That figure comprised "work that needed to be done to repair and replace all the damage cause[d] by the water incident," including removal of cabinets, ripping out of sheetrock (drywall), insulation replacement, electrical repairs, and interior carpentry.[6]

Odom acknowledges that these repairs were made but contends that they did not constitute "structural" repairs, as that term is used in the Property Code. We agree.

The disputed portion of the Seller's Disclosure Notice derives from Texas Property Code section 5.008(b), which requires a seller to disclose "Previous Structural or Roof Repair" of which he is aware. *See* Tex. Prop.Code Ann. § 5.008(b). As we consider the meaning of the statutory terms "structural" or "structural repair," our objective is to determine and give effect to the Legislature's intent. *See Tenaska Frontier Partners, Ltd. v. Sullivan*, 273 S.W.3d 734, 737 (Tex.App.-Houston [14th Dist.] 2008, no pet.). We begin with the plain and common meaning of the statute's words. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864,

---

5. On its face, the form states that it complies with, and exceeds the requirements of, the Property Code's disclosure provisions.

6. Citations omitted.

865 (Tex.1999). In addition, "[w]ords and phrases that have acquired a technical or particular meaning, whether by *legislative definition* or otherwise, shall be construed accordingly." Tex. Gov't Code Ann. § 311.011(b) (Vernon 2005) (emphasis added).

■ Chapter 5 of the Property Code does not define the word "structural." However, when construing a statutory word or phrase, we may consider the meaning assigned to the term elsewhere in the act or in another act of similar nature. *Guthery v. Taylor*, 112 S.W.3d 715, 721 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *Tex. Dep't of Pub. Safety v. Loeb*, 149 S.W.3d 741, 746 (Tex.App.-Austin 2004, no pet.); *L & M–Surco Mfg., Inc. v. Winn Tile Co.*, 580 S.W.2d 920, 926 (Tex.Civ. App.-Tyler 1979, writ dism'd); *see also Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex.2002) ("[C]ourts should not give an undefined statutory term a meaning out of harmony or inconsistent with other provisions[.]"). Thus, we will give the same meaning to a term that has been used in the same connection in similar statutes, unless something indicates that a different meaning was intended. *Guthery*, 112 S.W.3d at 721–22.

■ Elsewhere in the Property Code, the Legislature has consistently defined "structural," in the context of residential construction, as referring to "the load-bearing portion of a residence." *See* Tex. Prop.Code Ann. § 27.001(8) (Vernon Supp. 2008) (" 'Structural failure' . . . means actual physical damage to the *load-bearing portion of a residence* caused by a failure of the *load-bearing portion.*") (emphases added); *id.* § 401.002(13) (Vernon Supp. 2008) (" 'Structural' means the *load-bearing portion of a home.*") (emphasis added). Therefore, we likewise interpret the term "structural repair," as used in section 5.008(b), as referring to repairs performed on the load-bearing portions of a residence.[7]

During argument,[8] Robertson urged an expansive reading of the term "structural," from Webster's Dictionary, as "relating to . . . a structure," where "structure" would then be defined as "something constructed or built." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2266, 2267 (1993). We cannot accept this sweeping definition in this context, for at least two reasons. First, the dictionary itself sets forth a more specific definition when "structural" is used in the context of a building, that is, "of or relating to the load-bearing members or scheme of a building as opposed to the screening or ornamental elements."[9] *Id.* at 2266. Second, Robertson's proposed definition would render much of section 5.008(b) meaningless because, under that interpretation of "structural," any repair to the house—no matter how inconsequential—would have to be disclosed at the risk of incurring legal liability. Thus, under that interpretation, the remainder of the

---

7. We note that section 5.008(b) was enacted only *six days* before the Legislature included a statutory definition for "structural failure" in section 27.001. *Compare* Act of May 13, 1993, 73rd Leg., R.S., ch. 356, § 1, 1993 Tex. Gen. Laws 1614, 1616 (amended 2007) (current version at Tex. Prop.Code Ann. § 5.008(b)) *with* Act of May 19, 1993, 73rd Leg., R.S., ch. 797, § 2, 1993 Tex. Gen. Laws 3166, 3167 (amended 2003) (current version at Tex. Prop.Code Ann. § 27.001(8) (Vernon Supp. 2008)).

8. In his brief, Robertson offered no suggested definition for "structural" or "structural repair."

9. In fact, Webster's dictionary elaborates on this definition: "the [structural] details of a house consist of floor joists, rafters, wall and partition studs, supporting columns [and] foundations." *Id.* at 2266 (citation omitted).

statute, which requires disclosures about defects and repairs to *specific* parts of the home, would become superfluous, having already been subsumed into the all-encompassing category of "structural" repairs. *See* Tex. Prop.Code Ann. § 5.008(b). When possible, we will not interpret one portion of a statute in a manner that renders other parts of it meaningless. *See Entergy Gulf States, Inc. v. Summers,* 282 S.W.3d 433, 442 (Tex.2009); *Saade v. Villarreal,* 280 S.W.3d 511, 522 (Tex.App.-Houston [14th Dist.] 2009, pet. filed).

The evidence introduced at trial conclusively established that the repairs made necessary by the April 2002 rainstorm—that is, repairs to the cabinets, sink, bathroom fixtures, and drywall—did not involve the load-bearing portions of the home. Odom specifically testified that the post-rainstorm repairs were not "structural," in the sense they did not implicate "the things that hold the house up." Similarly, Rick Reynolds, who performed all of the repair work caused by the rainstorm, testified as follows:

Q. Did you do any structural work?

A. Not at all.

Nor did Robertson produce any other evidence that Odom or Barnes failed to disclose any repairs done to the load-bearing portions of the townhouse.[10]

Therefore, the trial court properly granted a directed verdict as to Odom's direct liability under DTPA section 17.46(b)(7). For the same reason, we hold that the evidence is factually sufficient to support the jury's finding that Odom and Barnes did not violate the DTPA by not disclosing the April 2002 rainstorm repairs. Accordingly, we overrule appellant's second and fourth issues.

### B. Odom's Vicarious Liability for Barnes's "Better than New" Statement

In his first and third issue, Robertson contends he offered more than a scintilla of evidence that Barnes's "better than new" statement violated DTPA laundry-list items (6) and (7). He continues by arguing that Barnes was Odom's agent, and that Odom therefore should be held vicariously liable for Barnes's misrepresentation. Thus, he concludes that the trial court erred by granting a directed verdict as to Odom's vicarious liability under section 17.46(b), subparts (6) and (7).

Appellant's argument is misplaced, because Odom did not request, and the trial court did not grant, a directed verdict on Robertson's vicarious-liability claims. Instead, the only discussion during the directed-verdict hearing involved Odom's *own* conduct and legal responsibility, not that which might be imputed to Odom as a result of *Barnes's* actions. For example, in the specific context of Odom's potential liability under section 17.46(b)(7), the record reflects the following discussion:

*THE COURT:* Okay. Seven.... Representing that goods or services are of particular standard, quality, or grade, or that goods are of a particular style or model if they are of another. Okay. Did **Mr. Odom** violate that?

*[Robertson's trial counsel]:* **Mr. Odom,** we believe, **did not** if I am following the Court's ruling **because the representations were made**—oral representations we were talking about **were made by Mr. Barnes.**

10. To the extent that the stucco reclad may have affected the load-bearing portions of the house and therefore constituted a "structural repair," the record reflects that Odom disclosed, and Robertson knew of, the fact that the original synthetic stucco had been removed and replaced by hard-coat stucco.

*THE COURT:* Okay. Then seven is granted *as to Odom.*[11]

Thus, although the trial court disposed of Odom's direct liability under sections 17.46(b)(6) and 17.46(b)(7), it was never asked to, and did not, rule on the vicarious-liability claims contained in Robertson's operative pleading.[12]

Moreover, Robertson's vicarious-liability allegations were not presented to the jury because he failed to request their submission, and did not offer a properly worded issue to the court. Under Rule 279, the party with the burden of proof on a ground of recovery is charged with the duty of submitting all of the disputed elements of his cause of action to the jury. Tex.R. Civ. P. 279; *see Cameron County v.*

*Velasquez,* 668 S.W.2d 776, 781 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.). The Rule also provides that, unless the issue was conclusively established by the evidence,[13] a party's failure to submit a properly worded issue, or to object to its omission, results in waiver. Tex.R. Civ. P. 279; *Bank of Tex. v. VR Elec., Inc.,* 276 S.W.3d 671, 676 (Tex.App.-Houston [1st Dist.] 2008, pet. denied).

Robertson did not submit a properly-worded question, and did not request a jury submission on agency or *respondeat superior,* in support of his claim that Odom was vicariously liable for Barnes's misrepresentation under section 17.46(b), subparts (6) or (7).[14] Therefore, he has

---

11. (Emphases added).

12. In his second amended petition, Robertson alleged:

> As it relates to each and every cause of action set forth herein, Plaintiff asserts the legal theories of agency and respondeat superior. Barnes and Coldwell Banker were acting as Odom's agents in the transaction made the basis of this lawsuit, and the representations and actions of Barnes and Coldwell Banker took place while Barnes and Coldwell Banker were operating within the course and scope of their employment for Odom as Odom's agents. Barnes and Coldwell Banker made representations to Plaintiff on behalf of Odom.... Odom's agents were acting under express, actual, or with implied authority on Odom's behalf. Pursuant to the laws of Agency ... any acts of Odom's agents are imputed to and are considered acts of the principal, Odom.

13. During oral argument, Robertson contended for the first time that a listing agreement between Odom and Coldwell Banker proved an agency relationship sufficient to impute liability to Odom. Even were we to construe this new argument as a claim that the agency issue was conclusively established under Rule 279, this contention was not included in Robertson's original or post-submission brief. Therefore, it is waived. *See Frias v. Atl. Richfield Co.,* 999 S.W.2d 97, 106 n. 8 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); *In re*

*C.A.K.,* 155 S.W.3d 554, 562 n. 5 (Tex.App.-San Antonio 2004, pet. denied) ("[A] new issue may not be presented for the first time at oral argument."); Tex.R.App. P. 39.2 ("Oral argument should emphasize and clarify the *written arguments in the briefs.*") (emphasis added).

14. In fact, Robertson did not even submit the issue of whether Barnes's "better than new" statement violated section 17.46(b)(6). Instead, the trial court submitted a liability question, worded exactly as Robertson requested, inquiring whether Barnes violated DTPA laundry-list items (5), (7), and (24). Moreover, the jury found that Barnes did not violate section 17.46(b)(7); thus, as a matter of law, the jury's negative finding on this question negated the issue of Odom's vicarious liability under section 17.46(b)(7). *See Shupe v. Lingafelter,* 192 S.W.3d 577, 580 (Tex.2006) (holding that omission of negligent-entrustment issue was harmless in light of jury's refusal to find that driver's negligence proximately caused accident); *Labor v. Warren,* 268 S.W.3d 273, 277 (Tex.App.-Amarillo 2008, no pet.) ("[W]e conclude that the trial court's ruling that no agency relationship existed between Warren and Hendricks, even if erroneous, was rendered harmless by the unchallenged findings that Warren did not defame Labor.").

waived any complaint about the failure to submit Odom's vicarious liability to the jury.

Accordingly, we overrule appellant's first and third issues.

## CONCLUSION

Finding no merit in the issues presented, we affirm the judgment of the trial court.