Opinion issued March 31, 2026



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00863-CV

_____

**HARRY A. BOUKNIGHT, JR., Appellant**

**V.**

**LLANELLY ENTERPRISES, Appellee**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-09066**

---

## O P I N I O N

The question presented in this appeal is whether the trial court properly granted a judgment notwithstanding the verdict (JNOV). Because we conclude that no question answered by the jury determined who owned the property at issue—

which was the sole issue presented by the plaintiff in his live pleading—the trial court properly granted JNOV.

We affirm.

## Background

This dispute has a genesis in a 2012 lawsuit brought by Bouknight against Chris Wilmot for fraudulent inducement related to an employment contract. *See Wilmot v. Bouknight*, 466 S.W.3d 219, 223 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). Following a bench trial, in June 2013, Bouknight received a $1,337,500.00 judgment against Wilmot (the 2013 judgment), which this Court affirmed on appeal. *See id.* at 226.

According to Bouknight, in December 2012—after the 2012 bench trial but before the 2013 judgment was signed—Wilmot contracted to purchase real property located at 5339 Tilbury Drive, Houston, Texas ("the Property") from Chandler Custom Homes. Wilmot and his wife were identified as the only buyers of the Property. In connection with the construction of a house on the Property, Wilmot selected custom upgrades for the flooring, fencing, and finishes. And Wilmot, through his wholly owned engineering company WCW International, paid $100,000.00 in earnest money under the purchase agreement. A $3.75 million title insurance policy was also taken out on the Property, with Wilmot as the proposed

2

insured. Further, the title company sent Wilmot wiring instructions in advance of closing. All of these documents referred to Wilmot, individually, as the buyer.

But in January 2013, Wilmot's sales agent instructed the title company to "redo the writing instructions with the purchasers' names as follows: Llanelly Enterprises Limited. Please make sure that Chris Wilmot's name is nowhere on the wiring documents and deed." That same day, the purchase contract was amended to name Llanelly as the buyer. And Wilmot signed the amended purchase contract on behalf of Llanelly.

This change was purportedly made because Wilmot asked to borrow money from Tunde J. Afolabi to finance the purchase, but Afolabi declined. Afolabi and Wilmot had been friends and business partners for several years. Afolabi, however, offered to purchase the Property through his company, Llanelly, and lease it to Wilmot.

The day *after* the amended purchase contract was signed, Afolabi, as purported director of Llanelly, executed a power of attorney designating Wilmot to act as Llanelly's "Agent for the purchase of the underlisted property 5339 Tilbury Drive, Houston, Texas 77056."

About a week later, Afolabi wired $3,749,972.00 to Charter Title Company to pay for the purchase of the Property. The wire transfer does not mention Llanelly or contain reference to the payment being made by Afolabi on behalf of Llanelly.

3

But the title company's ledger reflects that this payment was made by "Tunde Afolabi/Llanelly Enterprises."

And, on February 8, 2013, a deed to the Property was executed by seller Chandler Custom Homes to Llanelly as the buyer (the "Deed"). A title policy was also issued naming Llanelly as the insured on the Property.[1]

Thereafter, Llanelly purported to lease the Property to Wilmot as a tenant. The Lease to Purchase Agreement states that "[t]he amount being financed is US $3,750,000" and that Wilmot would pay an annual payment in the amount of $238,500 to Llanelly for ten years, with a final payment of $1,875,000 to be made on the 10th anniversary of the lease agreement. But Wilmot failed to make any of these payments and was purportedly evicted in December 2018.

Also in December 2018, prior to Wilmot's eviction, Bouknight, attempting to collect on his 2013 judgment against Wilmot, filed an application for turnover seeking, in part, turnover of the Property, arguing that Wilmot, not Llanelly, actually owns the Property. After several hearings on Bouknight's application for turnover, the trial court granted the application in part, appointing a receiver for the limited purpose of receiving and holding an instrument that released any rights and interest

---

[1]   The title company refunded the $100,000 earnest money deposit to WCW after the sale to Llanelly closed.

4

Wilmot has in the Property. Specifically, the order provided that the Property was being conveyed to a receiver for the limited purpose of holding such property interest

> until after such time as non-party Llanelly Enterprises, Ltd. may be properly served with process in an action . . . to determine whether the rights and interests of [Wilmot] in the Property, if any, are subject to turnover by law, as well as the beneficial and legal ownership of the Property, and the rights and interests of [Wilmot], if any, in the Property, and a final determination on these issues has been made by this Court.

Wilmot was permitted to continue living on the Property until the trial court determined whether Wilmot or Llanelly owned the Property.

Bouknight then filed the underlying suit for declaratory relief against just Llanelly. Bouknight did not name Wilmot as a defendant. Nevertheless, Bouknight sought a declaration of Wilmot's, as well as Llanelly's, ownership interest in the Property in order to establish that the Property could be subject to Bouknight's requested turnover relief requested against Wilmot.

Bouknight also brought claims against Llanelly for common law fraud and conspiracy,[2] alleging that Wilmot and Llanelly conspired to commit fraud by "concealing [Wilmot's] ownership of the Property through execution and filing of a purported deed that identifies Llanelly as the owner of the Property even though Wilmot is the true owner." Bouknight further alleged that "Llanelly and Wilmot

---

[2] In his first amended petition, Bouknight brought an additional claim against Llanelly under the Texas Uniform Fraudulent Transfer Act. But he dropped that claim in his second amended petition.

5

concealed their collusion for the very purpose of avoiding discovery that Wilmot is the actual owner of the property."

But at trial, the only question submitted to the jury was: "Do you find that the Deed was ineffective to convey the Property to Llanelly?"

At the charge conference, Llanelly objected to the submission of Question No. 1 on various grounds, including that the relief Bouknight sought in his petition "is that Mr. Wilmot owns the property. And this question doesn't get you there." The trial court, seeming to agree, responded: "I would think you-all would be very happy about that and would be talking about that later." Still, the trial court overruled Llanelly's objections and submitted Question No. 1 to the jury.

The jury answered "yes" to Question No. 1. Bouknight moved for entry of judgment based on the jury's verdict seeking a declaration that:

> the General Warranty Deed (the "Deed") signed February 8, 2013 which identifies "Chandler Custom Homes 5339 LP" as the grantor and "Llanelly Enterprises, Limited" as the grantee of the real property located at 5339 Tilbury Dr., Houston, TX 77056 (admitted as Defendant's Exhibit 6) was ineffective to convey the subject property to Defendant Llanelly Enterprises, Ltd. and the Deed is therefore invalid and set aside and is of no force or effect whatsoever.

Llanelly objected to entry of judgment in Bouknight's favor and moved for a JNOV on multiple grounds. First, Llanelly argued that there was no evidence to support the sole question submitted to the jury because there was no evidence that Chandler Custom Homes, the grantor, did not intend to convey the Property to

6

Llanelly. Llanelly also argued that Bouknight lacked standing to challenge the effectiveness of the deed.

Additionally, Llanelly argued that the trial court should render judgment against Bouknight on his claim for a declaratory judgment regarding ownership of the Property because, although he pleaded for a declaration that Wilmot owned the Property and Llanelly did not, Bouknight failed to submit a jury question on ownership of the Property and received no affirmative finding on ownership.

After hearing arguments, the trial court concluded that "the jury finding on Question No. 1 has no support in the evidence and should be disregarded." Accordingly, the trial court denied Bouknight's request for a declaratory judgment that the Deed was ineffective, denied Bouknight's request for a declaratory judgment that Wilmot owns an interest in the Property, and denied Bouknight's claims for fraud and conspiracy. The trial court awarded Llanelly trial and appellate attorney's fees and rendered a take nothing judgment on Bouknight's claims.

This appeal followed.

## JNOV

In his first issue, Bouknight argues that the trial court erred in granting JNOV because Bouknight's request for a declaratory judgment was supported by evidence that Llanelly, as the grantee, did not intend to accept the Property in its name but instead had a "different" or "special" purpose in purporting to accept the deed, thus

7

rendering it invalid. According to Bouknight, the jury was entitled to conclude that Llanelly did not accept the deed with the intention of owning the Property itself but rather intended to allow Wilmot to use its name to conceal his interest in the Property from creditors.

In response, Llanelly argues that the trial court properly granted JNOV because no question answered by the jury determined who owned the Property. Thus, Bouknight failed to submit anything to the jury that could allow the trial court to rule in Bouknight's favor on his only pleaded request for a declaratory judgment—i.e., who owned the Property. Although Llanelly does not explicitly refer to this argument as a cross-point, it raises this argument in response to Bouknight's issues on appeal and, if accepted, this argument would vitiate the jury's original verdict. Accordingly, we construe this argument as a cross-point and, because it is dispositive, address it first.[3]

## A.    Standard of Review

A trial court may disregard a jury verdict and render a JNOV if no evidence supports the jury finding on an issue necessary to liability or if a directed verdict

---

[3]    An appellee may present cross-points providing alternative reasons for affirming the JNOV. *See* TEX. R. CIV. P. 324(c); TEX. R. APP. P. 38.2(b)(1); *Dudley Constr., Ltd. v. Act Pipe & Supply, Inc.*, 545 S.W.3d 532, 537–38 (Tex. 2018) (discussing cross-point procedure). "If an appellee makes a substantive argument that would, if accepted, vitiate the jury's original verdict or prevent an affirmance of the judgment had one been rendered in harmony with the jury's verdict, it has presented a cross-point sufficient to avoid waiver." *Dudley*, 545 S.W.3d at 538.

8

would have been proper. *See* TEX. R. CIV. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). A directed verdict is proper (1) when the evidence conclusively establishes the movant's right to judgment or negates the opponent's right or (2) when the evidence is insufficient to raise a material fact issue. *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). The trial court should grant a JNOV "when the evidence is conclusive and one party is entitled to recover as a matter of law or when a legal principle precludes recovery." *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 15 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

## B. Bouknight's Proposed Judgment Was Not Supported by the Pleadings

Llanelly argues that the trial court properly granted a JNOV and rendered a take-nothing judgment because Bouknight's only pleaded declaratory-judgment request was for a finding that Wilmot, rather than Llanelly, is the actual owner of the Property—yet the only question submitted to the jury does not resolve property ownership. Thus, in essence, Llanelly argues that the trial court's JNOV was proper because Bouknight's proposed judgment was not supported by the pleadings.

Texas Rule of Civil Procedure 301 provides:

> The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. Provided, that upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any jury finding on a question that has no support in the evidence.

Tᴇx. R. Cɪᴠ. P. 301.

Accordingly, a judgment must be supported by the pleadings, and a party may not be granted relief in the absence of pleadings to support such relief. *Salomon v. Lesay*, 369 S.W.3d 540, 553 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A judgment that grants more relief than a party requested in the pleadings is "erroneous" and must be set aside. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813–14 (Tex. 1983); *Moran v. Williamson*, 498 S.W.3d 85, 93 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

"In determining whether the judgment conform[s] to the pleadings, an appellate court should view the pleadings as a whole." *Khalaf v. Williams*, 814 S.W.2d 854, 858 (Tex. App.—Houston [1st Dist.] 1991, no writ). A trial court is "not constrained to enter judgment only in a form specified by one of the parties, because in addition to conforming to the pleadings, the judgment must also reflect a correct application of the law." *Salomon*, 369 S.W.3d at 553–54.

In his live pleading, Bouknight alleged the following:

- "This is an action to establish that the $3.75 million home (the "Property") that . . . Wilmot . . . has lived in mortgage-free, rent-free and carefree for much of the past decade is indeed the valuable asset it appears to be and may be sold to satisfy the $1.7 million judgment he has never paid a single cent toward."

- The "Declaratory Judgment Act enables this Court to determine that ***the deed in question is a sham*** and that ***Wilmot is the equitable owner of***

10

*the Property*" and that "***Llanelly is not the true owner of the Property***." (Emphasis added).

- "Wilmot intended to purchase the Property in his own name, but fearful of a likely adverse judgment concocted a scheme to ***conceal his ownership interest*** by insisting that the name 'Llanelly Enterprises, Limited' be placed on the deed." (Emphasis added).

- The "***deed to the Property has been used by Wilmot to conceal ownership rights*** recognized by the law and/or equity from his debtors." (Emphasis added).

- The "Declaratory Judgment Act empowers [Bouknight] to obtain a finding that the ***Property actually belongs to Wilmot*** and is subject to being sold in satisfaction of [Bouknight's] unpaid judgment against Wilmot." (Emphasis added).

Bouknight's petition therefore requested that the "[c]ourt ***recognize Wilmot's ownership interest in the Property***, issue findings setting forth the nature and extent of that interest and order it to be sold in satisfaction of the underlying judgment." (Emphasis added). Bouknight also requested a finding that "Llanelly has ***no ownership interest*** in the Property." (Emphasis added).

Viewing the pleadings as a whole, we conclude that Bouknight's proposed judgment—declaring that the Deed was ineffective to convey the Property to Llanelly and was therefore invalid—does not conform to the allegations presented in the pleadings. Although the trial court was not constrained to enter judgment in any specific form, it is clear from Bouknight's live pleading that the disputed issue in this case relates to the ownership of the Property. Specifically, whether Wilmot— and not Llanelly—is the true owner of the Property such that the Property is subject

11

to turnover in satisfaction of the 2013 judgment.  Bouknight's proposed judgment declaring that the Deed is ineffective to convey the property from Chandler Custom Homes to Llanelly does not resolve the issue of ownership as to *Wilmot*.[4]

Indeed, even if the Deed was ineffective to convey the property to Llanelly, that does not mean that *Wilmot* is the owner of the Property.  There needed to be a separate jury finding on that fact issue.  And as evidenced by the pleadings, resolution of that issue is the entire basis of this lawsuit.  Bouknight's proposed judgment, as based on the jury's response to Question No. 1, simply did not relate to the relief requested in his pleadings.  As the trial court pointed out during the hearing on Llanelly's motion for JNOV, the jury's response to Question No. 1 did "not answer[] the question presented in the plaintiff's petition[]."  Accordingly, we hold that Bouknight's proposed judgment is not supported by the pleadings and therefore the trial court properly granted a JNOV and entered a take-nothing judgment on Bouknight's claim for declaratory judgment relief.

## C.  Bouknight Waived His Sole Claim for Declaratory Judgment

The trial court's JNOV was proper for yet another reason—Bouknight failed to submit any question to the jury to support his sole pleaded declaratory-judgment claim with respect to the ownership of the Property.

---

4  Nor is it equivalent to a finding that Llanelly has no ownership interest in the property whatsoever.

It is the responsibility of the party with the burden of proof on a ground of recovery to request that the issue be submitted to the jury. *See* TEX. R. CIV. P. 279; *Robertson v. Odom*, 296 S.W.3d 151, 159 (Tex. App.—Houston [14th Dist.] 2009, no pet.). If a question on a ground of recovery is omitted, or the question omits some essential element of a ground of recovery and is submitted to the jury over the objection of the party without the burden of proof, the party who objected to the partial submission is entitled to judgment, even if the jury returns a finding on the submission in favor of the party with the burden of proof. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992); *McKinley v. Stripling*, 763 S.W.2d 407, 410 (Tex. 1989).

That is, "when a disputed and essential issue is omitted over the objection of a party, the appellate court must find that the party waived that element and by so doing did not meet the burden placed on him by law." *Winfield v. Renfro*, 821 S.W.2d 640, 657 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (op. on reh'g); *see also* TEX. R. CIV. P. 279; *Payne*, 838 S.W.2d at 241; *McKinley*, 763 S.W.2d at 410. The objection or request places the burden of submitting a correct question on the party with the burden of proof, and the result of that party's failure to submit a correct question after objection is a waiver of the ground of relief. *See McKinley*, 763 S.W.2d at 410; *see also Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 565 (Tex. 2002).

Here, Bouknight sought a declaration "that the deed in question is a sham and that Wilmot is the equitable owner of the Property," "that the Property actually belongs to Wilmot and is subject to being sold in satisfaction of [Bouknight's] unpaid judgment against Wilmot," and that "Llanelly has no ownership interest in the Property." But Question No. 1 only asked the jury whether "the Deed was ineffective to convey the Property to Llanelly?"

The declaratory relief sought by Bouknight in his petition—i.e., that Wilmot, not Llanelly, was the true owner of the Property—was much broader than the limited question posed to the jury. *See Castille v. Serv. Datsun, Inc.*, No. 01-16-00082-CV, 2017 WL 3910918, at *8–9 (Tex. App.—Houston [1st Dist.] Sept. 7, 2017, no pet.) (mem. op.) (holding that declaration sought by appellee was much broader than single question asked of jury and, therefore, appellee failed to "submit a question to the jury that would support its claim for declaratory relief").

While an affirmative finding that the Deed was ineffective to convey the Property from Chandler Custom Homes to Llanelly may have been one step in recovering the ultimate relief Bouknight seeks, nothing in that finding answers the question of who owns the Property.[5] Nor is it equivalent to a specific finding of who

---

[5] Despite Llanelly raising this issue in its brief, Bouknight does not respond to this argument except to say, "Llanelly's argument that the 'single issue submitted to the jury. . . was incapable of supporting the declaratory judgment' is a red herring."

owns the Property *as between Llanelly and Wilmot*. And the jury was asked no other question that would address the ultimate issue of ownership.[6]

Llanelly objected to submission of Question No. 1 on the basis that it did not ask the jury to determine whether Wilmot owned the Property, which is the ultimate declaratory relief Bouknight sought in this case. Because Llanelly objected to the submission of this question, Bouknight's failure to request an affirmative finding on the question of ownership required the trial court to render judgment for Llanelly.[7] *See Payne*, 838 S.W.2d at 241; *see also AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 666 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("When a plaintiff fails to request an issue and an affirmative finding regarding the omitted

---

[6] For instance, as the trial court pointed out during the post-trial hearings on Llanelly's motion for JNOV, the jury was not asked to determine what interest Wilmot has in the Property, whether Wilmot and Llanelly unlawfully or fraudulently amended the purchase contract, or who paid for the purchase of the Property. Nor was the jury asked about the validity of the original purchase agreement signed by Wilmot or the lease-to-purchase agreement between Llanelly and Wilmot, the two documents Bouknight contends created an equitable interest in the Property for Wilmot.

[7] Even if Bouknight had requested such a finding with respect to Wilmot's ownership, he would not have been entitled to such relief because Wilmot was not named as a defendant. *See* TEX. R. CIV. P. 278 (court shall submit questions, instructions, and definitions which are raised by written pleadings and evidence); *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004) ("A declaratory judgment requires a justiciable controversy as to the rights and status of *parties actually before the court* for adjudication, and the declaration sought must actually resolve the controversy. . . . Because there are no 'plaintiffs' from Sections Three and Six, there is no person in those sections for whom rights could be declared in this declaratory judgment action." (emphasis added)).

issue is essential to recovery, the trial court must render judgment for the defendant.").

Accordingly, we hold that the trial court properly granted JNOV and entered a take-nothing judgment on Bouknight's declaratory-judgment claim.

## Conclusion

We affirm the trial court's judgment in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Gunn and Johnson.