**Opinion issued April 7, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00013-CV

———————————

**MARCUS BRENT PATTERSON, INDIVIDUALLY, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DIANE PATTERSON, AND AS NEXT FRIEND OF DANIEL PATTERSON AND DANAE PATTERSON, AND DANAE PATTERSON AND DANIEL PATTERSON (NOW 18 YEARS OF AGE), Appellants**

**V.**

**BREWER LEASING, INC., Appellee**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-64488**

---

# O P I N I O N

This is a bill of review proceeding. On June 30, 2015, we issued an opinion reversing and remanding the trial court's judgment on appellants' fraud claim. We affirmed the remainder of the judgment.

Appellant filed a motion for rehearing, which we deny. We withdraw our June 30, 2015 opinion and issue this opinion in its stead to correct a clerical error and address appellants' arguments on rehearing. Our June 30, 2015 judgment remains unchanged.

## BACKGROUND

Diane Patterson was killed on June 15, 2006 when her stationary vehicle was struck by an 18-wheeler truck driven by Charles Hitchens. Traffic had been stopped on Interstate Highway 10 by police officers escorting an oversized load onto the freeway. Witnesses testified, and the physical evidence confirmed, that Hitchens did not slow down from his 55-mile-per-hour speed before plowing into Diane's stopped car and hitting several other vehicles.

## THE 2006 LITIGATION

In Cause No. 2006-76647, the Patterson family sued Hitchens, Brewer Leasing, Inc., Texas Stretch, Inc., Ray Bellew & Sons, Inc., and Williams Brothers Construction Co., Inc. for wrongful death. It alleged that Texas Stretch was the company that hired Hitchens and that related-company Brewer Leasing owned or leased the tractor-trailer combination that Hitchens was driving. Texas Stretch had

its TxDOT number, corporate logo, US DOT number, and ICC numbers on both sides of the tractor. A sign on both sides of the cab of the tractor also contained Brewer Leasing's TxDOT number and corporate logo, and it stated "Leased to Brewer Leasing, Inc."

The Patterson family further alleged that defendants Ray Bellew & Sons and Williams were negligent in their oversight and moving of the large bridge beams onto the freeway that caused the freeway traffic to stop at the location of the accident. According to the Patterson family, that location was not a safe entrance ramp to bring such equipment on the freeway, and there should have been additional motorcycle police escorts used.

On March 6, 2009, Brewer Leasing, Texas Stretch, and Hitchens filed a pre-trial Joint Motion of Defendants to Exclude Evidence that Hitchens tested positive for cocaine after the accident. They represented in that motion that the amount of cocaine in Hitchens's system had not been quantified and that there was no other evidence indicating that he was impaired. Because evidence of a drug or alcohol consumption is generally not admissible in an automobile-accident case unless there is also evidence of impairment that causes the accident, defendants argued that the positive drug test evidence should be excluded as highly prejudicial. On March 27, 2009, the trial court granted the motion to exclude this evidence.

Williams Brothers and Ray Bellew & Sons each reached settlements with the Patterson family and were released. Two days before the April 6, 2009 trial setting, the Patterson family also reached a settlement with Texas Stretch requiring money be paid to the Patterson family by or on behalf of Texas Stretch, Sagamore Insurance Company (Texas Stretch's insurer), and Mr. A.B. Brewer (100% owner of Texas Stretch and Brewer Leasing). The terms of that agreement included:

A. Texas Stretch would pay the Patterson family $470,000 as follows: (1) $400,000 by Sagamore Insurance, (2) $25,000 by Texas Stretch, and (3) $45,000 over time by Texas Stretch, personally guaranteed by Mr. Brewer;

B. Texas Stretch was released;

C. Brewer Leasing would hire Mr. Herzog (the Patterson family's attorney) to pursue *Stowers* and other claims against Home State (Brewer Leasing's insurer); and

D. Brewer Leasing would later assign its claims against Home State to the Patterson family.

Claims against Brewer Leasing were not released as part of this settlement. Also as part of the settlement terms, Mr. Brewer was released from personal liability for future payments (his personal guarantee of some of Texas Stretch's obligation excepted) and, thus, Brewer Leasing received a Covenant to Not Execute (even though Brewer Leasing was not a party to the settlement or a released party).

The initial portion of the trial was had to the jury. During the second week, Ray Bellew & Sons settled. Hitchens had already stipulated to 100% fault and,

4

with the Patterson's family agreement, the jury was dismissed and the trial court heard the remainder of the evidence and closing arguments. A post-answer default judgment was taken against Brewer Leasing. The trial court's findings of fact and conclusions of law included the findings that (1) Hitchens's negligence was the sole cause of the accident, (2) Hitchens was employed by Texas Stretch, and (3) "both Brewer Leasing and Texas Stretch were, at the time of the events in question, the statutory employer of Charles Hitchens under the theory of logo liability." On June 2, 2009, the trial court signed a final judgment ("2009 Judgment") memorializing the resolution of all the parties and claims, applying various settlement credits, and then rendering judgment of approximately $8,000,000 in actual damages in favor of the Patterson family and against Brewer Leasing and Hitchens, jointly and severally.

After the 2009 Judgment was entered, Mr. Herzog sent a statutory demand notice to Home State, on behalf of Brewer Leasing, based on his understanding that, under the parties' settlement agreement, he was being hired by Brewer Leasing to represent it in a *Stowers* suit. A dispute then arose over Mr. Herzog's proposed fees, and Brewer Leasing ultimately refused to hire him. Later, the Patterson family received an oral assignment of Brewer Leasing's claims against Home State, and Mr. Herzog filed suit against Home State on behalf of the

5

Patterson family as assignees of Brewer Leasing. In October 2010, the Patterson family received a written assignment.

## THE UNDERLYING BILL-OF-REVIEW PROCEEDINGS

In 2011, the Patterson family sued Brewer Leasing, alleging fraud in the 2006 litigation. Specifically, the Patterson family alleged that Brewer Leasing had concealed evidence about the large amount of cocaine in Hitchens's system at the time of the accident. According to the Patterson family, this deception induced the trial court in the 2006 litigation to exclude the evidence that Hitchens tested positive for cocaine two hours after the accident, and induced the Patterson family to accept settlement terms that they otherwise would not have accepted.

Their bill-of-review petition alleged:

8.    Plaintiffs obtained a favorable judgment [in Cause No. 2006-76647 against Brewer Leasing], but were prevented from making a meritorious claim for punitive damages and obtaining a full recovery of actual damages by the extrinsic fraud of Defendant. Defendant fraudulently concealed knowledge of the massive level of cocaine in Charles Hitchens's system at the time the tragic auto collision occurred. Brewer Leasing referred to "an allegedly positive drug test." Brewer Leasing hid the massive level (43,444 nanograms) from all plaintiffs and from some former defendants, then falsely claimed in writing to this Court just before the trial that there was "no evidence that Hitchens was impaired." Knowing the urine test administered two hours after the wreck revealed a precise and massive level of 43,444 nanograms, Brewer Leasing falsely wrote that the positive drug test "contained no quantification as to amount of cocaine found, if any." Brewer Leasing falsely concluded, "since there is no evidence that Hitchens was impaired . . ." Brewer Leasing's fraudulent misrepresentations constituted extrinsic fraud and a wrongful act.

9.     The extent of the concealment is further revealed by Exhibit E to Brewer Leasing's Motion to Exclude the positive drug test. In Exhibit E Assistant District Attorney Warren Diepram recounts how neither the Houston Police Department nor the Harris County District Attorney had been able to obtain the truth a year later, on June 21, 2007. "It is unknown whether the private lab . . . quantified the amount. As of today, this information has not been obtained . . ." (See Exhibits 1, 2, 3, 4, and 5).

10.     Brewer Leasing knew that 43,444 nanograms was a huge level of cocaine. Case law researched by Brewer Leasing's counsel revealed toxicologist testimony that the following levels proved impairment: 756, 1194, 1363, over 2000, and 6206 nanograms. Nanograms of 12,500 were a "considerably high value," and 26,720 nanograms were "an immense concentration." At 43,444 nanograms Charles Hitchens was massively impaired, Brewer Leasing knew it, and Brewer Leasing chose to conceal this truth and misrepresent the truth.

11.     Plaintiffs were not at fault and were not negligent in failing to discover the truth. Plaintiffs, along with other plaintiffs and a defendant in the original proceeding, sent several discovery requests to obtain information about the level of cocaine in Charles Hitchens's system. Brewer Leasing made positive assertions to Plaintiffs and this Court that there was no evidence of the level of cocaine in Charles Hitchens's system or impairment at the time of the collision. Brewer Leasing fooled the Houston Police Department, the Harris County District Attorney, all plaintiffs, two defendants, and Judge McCally.

. . . .

13.     Plaintiffs have exercised due diligence. Due to Defendant's fraudulent concealment and fraudulent misrepresentations, Plaintiffs were not aware that Defendant had knowledge of Charles Hitchens's extraordinary cocaine level until concealed documents were reluctantly produced in Cause Number 2010-35479, a subsequent *Stowers* case based on the original proceeding. In the *Stowers* action, Plaintiffs gained access in late October and early November 2010 to information on the cocaine level that was previously concealed and that conclusively proved fraudulent misrepresentation. This information was not discovered until well after the deadlines for a

motion for new trial and an appeal had passed in 2006-76647. Now that Plaintiffs have discovered the fraud against them and this Court, Plaintiffs are seeking this Bill of Review to correct the injustice inflicted by the conscious acts of Defendant.

## A. Patterson Family's Theory of Liability against Brewer Leasing

The Patterson family's petition for bill of review set forth the following in a section entitled "Liability of Brewer Leasing" explaining their theory of liability:

20.    On July 26, 2005 Texas Stretch, Inc. was the Lessor of a 2002 Peterbilt Class 8 motor vehicle, YIN 1 XPSDB9X220528915, commonly called "a tractor" or "a power unit." (Exhibit 302).  Brewer Leasing, Inc. was the Lessee. Federal law, Texas law, and paragraph 8 of the Lease make Brewer Leasing liable for any injury caused from operation of the vehicle. Paragraph 2 required Brewer Leasing, as Lessee, to place signs on the vehicle showing it as leased to Brewer Leasing, Inc.:  Brewer Leasing complied. Paragraph 5 specified that all drivers would be employees of Texas Stretch, Inc.: Brewer Leasing complied.

21.    In April 2006 Texas Stretch hired Charles Hitchens as a driver. On Thursday, June 15, 2006, as an employee of Texas Stretch, driving with the permission of Texas Stretch and only Texas Stretch, under the dispatch of Texas Stretch, hauling a load for Texas Stretch, Charles Hitchens operated the 79,940 pound fully loaded leased vehicle while impaired by and under the influence of a massive amount of cocaine (43,444 nanograms or more of cocaine metabolite were in his system).

22.    On June 15, 2006 Officer Stan Jolly stopped traffic on 1-10 just west of Highway 6.  Visibility was perfect and the road was dry. Officer Jolly was in uniform and operating his motorcycle with his hazard flashers/emergency lights on. Eight vehicles stopped, blocking all three lanes of traffic. A ninth vehicle, operated by Jimmy Bimmage, began to enter I-10. Mr. Bimmage was operating with an oversize load permit. His oversized vehicle had approximately 50 wheels, measured about 160 feet long, and weighed about 198,000 pounds. Officer Robert Norris, also in uniform with his motorcycle

8

hazard flashers/emergency lights on, was in the back of the eight stopped vehicles.

23. Sitting high up in the driver's seat of his Class 8 motor vehicle, impaired by massive quantities of cocaine, Mr. Hitchens failed to see a 160 foot long 50 wheeled vehicle approaching from his right, eight stopped vehicles in front of him, or Officer Norris' flashers-lights and hand signal. Driving at highway speed, without braking, in full view of numerous eyewitnesses who watched in horror, Mr. Hitchens slammed into the rear of Diane Patterson's stationary Ford Expedition and then careened down the highway.

24. Over the course of the next few minutes Diane Patterson died, nine individuals were hurt, at least five vehicles were destroyed, and three more vehicles sustained damage.

25. Mr. Hitchens was negligent, and grossly negligent, in his operation of the vehicle leased by Brewer Leasing that displayed the Brewer Leasing logo. That negligence was a proximate cause of the collision and the death of Diane Patterson. Brewer Leasing is liable for all actual damages plus punitive damages of at most 400% of all actual damages. These actual damages include Diane Patterson's pain and mental anguish before her death, funeral and burial expenses, and then for Marcus Patterson, Daniel Patterson and Danae Patterson all of the following in the past and in the future:

> A. Pecuniary loss,
>
> B. Loss of companionship and society, and
>
> C. Mental anguish.

Marcus Patterson is also entitled to recover the fair market value of the Expedition destroyed in the collision.

26. Brewer Leasing is liable for Mr. Hitchens' negligent driving behavior for these reasons:

> A. The lease's existence;
>
> B. The specific provisions of the lease;

9

C. The Brewer Leasing logo on both the driver and passenger's side fuel tanks; and

D. Mr. Hitchens' provision of a Brewer Leasing cab card to the police who investigated the collision.

27. Brewer Leasing is liable for Charles Hitchens' gross negligence because Brewer Leasing ratified Charles Hitchens' conduct. Brewer Leasing did or knew all of the following:

A. Knew a woman was killed in the collision;

B. Knew Charles Hitchens admitted fault at the scene;

C. Knew Charles Hitchens was drug tested about two hours after the collision;

D. Knew Charles Hitchens admitted to a private investigator the day after the collision to recent cocaine use;

E. Knew the vehicles driven by Charles Hitchens on June 15, 2006 were not scheduled vehicles (tractor or trailer) on the Texas Stretch insurance policy with Sagamore Insurance Company;

F. Knew the vehicles driven by Charles Hitchens on June 15, 2006 were scheduled vehicles on the Brewer Leasing policy with Home State County Mutual Insurance Company; and

G. Knew Charles Hitchens was an employee of Texas Stretch and never of Brewer Leasing.

Armed with these facts and the resulting fear of no insurance coverage, or inadequate coverage, Brewer Leasing took the following actions ratifying Mr. Hitchens' conduct:

H. Falsely claimed in a recorded call with a Sagamore adjuster that Charles Hitchens was a Brewer Leasing employee;

I. Produced Charles Hitchens' employee file, thereby subtly implying Charles Hitchens was their employee;

10

J.    Implemented a plan to fraudulently misrepresent and conceal the level of cocaine revealed by Charles Hitchens' drug test;

K.    Implemented a plan to lie and distort the truth to defraud the injured parties, this Court, and the Harris County District Attorney's office, so that their ratification of Charles Hitchens's conduct would have no financial impact or a lesser financial impact on Brewer Leasing and their insurance company; and

L.    Conceal their fraud and their cover-up by destroying some of the files relating to Charles Hitchens in conjunction with others and concealing the rest of the damaging evidence.

28.    Brewer Leasing's actual, constructive, and extrinsic fraud, and wrongful acts (including all acts listed in paragraph 27) also proximately caused damages to the Patterson family, including but not limited to expenses incurred that would not have been incurred had the fraud not occurred. In addition to obtaining relief in their Bill of Review, in accordance with Texas case law the Patterson family seeks a recovery of these actual damages.

**B. Relief Sought against Brewer Leasing**

As relief, the Patterson family sought an order (1) voiding the Covenant not to Execute previously executed in favor of Brewer Leasing as part of the 2009 settlement, (2) voiding the assignment of claims against Home State from Brewer Leasing to the Patterson family, and (3) voiding the June 2, 2009 Judgment as it relates to Brewer Leasing.  The Patterson family also sought a new judgment against Brewer Leasing for negligence, gross negligence, and fraud.

## C. The Agreed Partial Judgment

On July 2, 2012, the trial court signed an Agreed Partial Judgment granting the Patterson family some of their requested relief and setting a trial date to try their claims against Brewer Leasing:

> Defendant BREWER LEASING, INC., without admitting or denying Plaintiffs' allegations in Plaintiffs' Original Petition . . . ha[s] agreed that judgment should be entered herein in favor of Plaintiffs . . . and against BREWER LEASING, INC. (hereinafter "Defendant"), with respect to three issues. It is accordingly

> ORDERED, ADJUDGED AND DECREED by the Court that the Judgment signed June 2, 2009 in Cause No. 2006-76647 styled *Marcus Brent Patterson, Individually, as Independent Executor of the Estate of Diane Patterson and as Next Friend of Daniel Patterson and Danae Patterson* is hereby set aside, null and void ab initio, and of no legal effect for any purpose. It is further

> ORDERED, ADJUDGED, and DECREED that the Covenant to Not Execute and all prior oral and written assignments of causes of action by Brewer Leasing, Inc. to the Pattersons are hereby set aside, null and void ab initio, and of no legal effect for any purpose

> Plaintiff shall be GRANTED the right to fully retry their claims against BREWER LEASING, INC. and the case is set for trial on the two week docket beginning the 15th day of October, 2012.

## D. The Trial

A week-long trial was held. Hitchens pleaded the Fifth Amendment, but his stipulation admitting that his negligence caused the accident was admitted at trial. The Patterson family's theory of the case was that Brewer Leasing was primarily responsible for Hitchens's negligence as lessee of the truck he was driving and, additionally, that Brewer Leasing ratified Hitchens's actions. Brewer Leasing's

12

position was that it was not responsible, as it was only the owner, not the lessee, of the truck[1]; it instead argued that Texas Stretch (as Hitchens's employer and the truck operator), Hitchens (as the driver), and Ray Bellow & Sons (as the company that caused the slow-down on the freeway) were responsible. Accordingly, the bulk of the trial testimony and evidence centered on (1) who owned or leased the truck on June 15, 2006—the day of the accident, and (2) damages suffered by the Patterson family. Relevant to the ownership/leasing question:

*Lonnie Box* – Box testified that he is General Manager of both Texas Stretch, Inc. and Brewer Leasing, Inc. He started work at both companies in July 2006, shortly after the accident. He is considered the "number two guy" in charge at both companies, with the owner, Mr. Brewer, being President and the number one in charge of both. Box testified that, to his knowledge, Mr. Brewer owned 100% of both Texas Stretch and Brewer Leasing.

Box testified that Brewer Leasing had its logo and TxDOT number painted on the side of the truck Hitchens was driving the day of the accident. Box acknowledged a written July 26, 2005 lease agreement under which Texas Stretch leased the tractor to Brewer Leasing. Box explained that leases of tractors have to be in writing under federal law. The lease contains no expiration date, and states that it "shall be in full force and effect until terminated by either party hereto, but

---

[1]     This was apparently a change in position, as Brewer Leasing had previously contended that it was the lessee of the truck.

not less than 30 days by written notice delivered by either party . . . " Box testified that he had never seen a written notice terminating the lease, and that neither Texas Stretch nor Brewer Leasing had produced one in this litigation.

Box also explained that the Federal Motor Carriers Safety Act requires owners, lessors, and lessees to put their name and logo on the side of rigs to "identify equipment and who the operating company is." He further testified that, based on the signage on the truck Hitchens was driving, both Texas Stretch and Brewer Leasing would be responsible for Hitchens's actions:

> Q. And they also paint their specific unique identifying number with the agencies, correct?
>
> A. That's correct.
>
> Q. The tractor involved in this collision had Texas DOT numbers and U.S. DOT numbers on both the driver and passenger side of the vehicle, true?
>
> A. To my knowledge, yes.
>
> Q. And what effect do you understand that has by putting your name, your logo and your identifying federal and state registration numbers on the side of the vehicle? What effect does that have if the vehicle is in a wreck?
>
> A. That is the operating company that is responsible for the movements of that vehicle.
>
> Q. And, therefore, responsible for any injuries caused by the negligent operation of the vehicle, correct?
>
> A. Correct.
>
> Q. Can we agree that if Mr. Hitchens did anything wrong on June 15, 2006 in his operation of the motor vehicle, Texas Stretch and Brewer Leasing are both responsible for his actions?
>
> A. Yes.

Brewer Leasing also played clips from Box's deposition, during which Box testified that Texas Stretch was Hitchens's employer at the time of the accident. He also testified that Texas Stretch sold the truck to Brewer Leasing in 2005 and then Texas Stretch leased the truck from Brewer Leasing.

*A.B. Brewer* – Mr. Brewer testified that he has always been the 100% owner and President of both Texas Stretch and Brewer Leasing. He testified that Brewer Leasing owned the truck that Hitchens was driving and that—despite the lease reflecting otherwise—it was leased *from* Brewer Leasing *to* Texas Stretch, not the other way around:

> Q. You heard Mr. Box testify that based on his understanding of the facts as your general manager, if Mr. Hitchens driving behavior was inappropriate, both Texas Stretch and Brewer Leasing are responsible for Mr. Hitchens. Do you agree with Mr. Box on that point?
>
> A. Yes.
>
> Q. Okay. So will you now accept responsibility on behalf of the Brewer Leasing for the death of Diane Patterson?
>
> A. Well, the only thing about it, Brewer Leasing was not operating the truck. Texas Stretch was.
>
> Q. Yes, sir.
>
> A. And Brewer Leasing just leased the truck to Texas Stretch.
>
> Q. And do you have a written lease from Brewer Leasing to Texas Stretch?
>
> A. That I'm pretty sure we do. But I didn't do none of that work. Doug Shelby and my brother supposed to took care of all that.

15

Q.    Okay. In the seven years this case has been pending since Diane died, have you ever produced a written lease from Brewer Leasing to Texas Stretch?

A.    I don't know.

. . . .

Mr. Brewer also testified that, in 2006, Texas Stretch and Brewer Leasing operated out of the same office with the same officers serving each company, although he denied that Texas Stretch ever did business as Brewer Leasing.  When asked about defense exhibits indicating that Texas Stretch, not Brewer Leasing, owned the truck in on February 16, 2005, Brewer stated "It says here it did, but I don't know how they did it."  When asked about the logos on the side of the truck indicating that the truck was leased to Brewer Leasing on the day of the accident (almost nine months after Mr. Brewer claimed Brewer Leasing became the owner), Mr. Brewer responded: "I can't tell you."

*Exhibits* – Relevant to the issue of who owned or leased the truck, the following exhibits were admitted:

February 16, 2005 Texas Department of Transportation "License Cab Card" identifying Texas Stretch as both "registrant" and "owner" of truck;

July 26, 2005    lease agreement between Texas Stretch as "owner" and Brewer Leasing as "lessee" of truck;

Sept. 28, 2005    State of Texas Certificate of Title identifying Texas Stretch as "previous owner," and Brewer Leasing, as "owner" of truck;

16

| | |
|---|---|
| January 20, 2006 | State of Oklahoma Certificate of Title for Heil trailer identifying Brewer Leasing as "owner"; |
| June 15, 2006 | photo of truck from accident scene showing "Texas Stretch" logo on side of the truck, along with a sign reading "leased to Brewer Leasing"; |
| June 15, 2006 | "Texas Peace Officers Crash Report" identifying "Texas Stretch" as owner of truck; and |
| June 15, 2006 | "Houston Police Department Truck Enforcement Unit" citation and "Out of Service Notice" identifying Brewer Leasing as "owner" of truck and Texas Stretch Inc. as "lessee/mc." |

**E. The Verdict**

The jury found that Diane's death was caused 100% by Hitchens's gross negligence, and awarded to the Patterson family actual and punitive damages. The jury answered the only two questions about Brewer Leasing in Brewer Leasing's favor:

## Question No. 1

Was the tractor driven by Charles Hitchens on June 15, 2006 leased to Brewer Leasing, Inc.?

Answer:       No

## Question No. 8

Do you find my clear and convincing evidence that Brewer Leasing, Inc. ratified or approved the gross negligence of Charles Hitchens?

Answer:       No

**F. The Judgment**

Post-trial, the Patterson family took the position that because the jury found Brewer Leasing was *not* the lessee of the truck on June 15, 2006, Brewer Leasing should be held responsible as the owner of the truck. Specifically, it filed a Motion for Entry of Judgment, arguing that Brewer Leasing is vicariously liable for Charles Hitchens's negligence because (1) the evidence conclusively proved that Brewer Leasing owned the Heil trailer Hitchens was pulling and that trailer qualified as a commercial motor vehicle, and (2) Brewer Leasing is judicially estopped to deny ownership of the tractor negligently operated at the time of the collision.

Brewer Leasing also filed a motion requesting that the trial court enter a take-nothing judgment on the jury's verdict in favor of the defendants.

The Patterson family then filed a motion to amend their pleadings, to add two theories against Brewer Leasing, i.e. (1) "Brewer Leasing owned the Heil trailer, a commercial motor vehicle operated negligently at the time of the collision while not leased by or insured by Texas Stretch;" and (2) "Brewer Leasing is judicially estopped to deny ownership of the Peterbilt tractor negligently operated at the time of the collision while not leased by or insured by Texas Stretch." That motion argued that the Patterson family's pleading gave fair notice that they sought to hold Brewer Leasing vicariously liable for Hitchens's actions.

18

On September 19, 2013, the trial court denied the Patterson family's motion to amend their pleadings, and entered a take-nothing Final Judgment.

The Patterson family filed a Motion to Correct Judgment, Modify Judgment, Judgment JOV, or New Trial.[2] That motion argued that there "are five legal issues that this Court needs to resolve":

A. Brewer Leasing's liability as owner of the Peterbilt tractor,

B. Brewer Leasing's liability as owner of the Heil trailer,

C. Brewer Leasing's liability if they were the lessee of the Peterbilt tractor (and not the owner),

D. The Court's failure to try the fraud claim, and

E. The reversal of the issues correctly resolved in the agreed interlocutory order.

The Patterson family argued that the trial court should grant JNOV on the jury's finding that Brewer Leasing was not the lessee of the tractor on the day of the accident. Alternatively, it contended that it had adequately pleaded that Brewer Leasing was liable as the owner of the tractor and that, in any event, the trial court had abused its discretion by denying their motion to amend their pleadings to allege such liability.

The Patterson family also argued that the trial court erred in granting a final judgment without resolving their pleaded fraud claim against Brewer Leasing. They point to discussion at the pre-trial conference during which the trial court

---

[2]   This motion was heard by a different judge than had tried the case.

19

refused to admit several exhibits in support of their fraud claim because the trial would be limited to the wrongful death claims.

The Patterson family further contended that the final judgment erroneously reversed the terms of the parties' Agreed Interlocutory Order, and that the judgment conflicts with portions of the 2009 judgment. Their motion summarized their position and relief sought as follows:

> This is a Bill of Review case. Portions of the underlying 2009 judgment have never been attacked. The final judgment in this case needs clarity on which portions of the underlying judgment survive and which portions are reversed. Today there are two judgments: one says Brewer Leasing owes $8.8 million, one says Brewer Leasing owes nothing but leaves the first judgment intact, and both are wrong. Brewer Leasing was the lessee of the tractor on June 15, 2006 as a matter of law, therefore a judgment non obstante veredicto is a proper procedural remedy. In the alternative, if Brewer Leasing wants to be the owner, then with no written lease to anyone Brewer Leasing is liable as the owner and the judgment can be corrected.

> Brewer Leasing is liable as the owner of the trailer with no written lease to anyone and thus the judgment can be corrected.

> Although no trial amendment is necessary, the Patterson family is entitled to one and their motion can still be granted.

> The relief granted in the Agreed Interlocutory Order needs to be carried forward into a final judgment.

> This Court has the plenary power to remedy all of these errors.

> If the judgment is reversed and judgment is entered for the Patterson family, the Patterson family will formally non-suit the fraud cause of action (with the consent of Brewer Leasing and this Court). If not, the Patterson family retains their right to try their fraud claim separately and the judgment should be revised to reflect its interlocutory nature.

> As a last resort, if the Court desires, a new trial may be given on either the limited issue of Brewer Leasing's liability for 100%

20

driver negligence, ratification of gross negligence and fraud, or a new trial may be ordered on all issues.

WHEREFORE, the Patterson family prays that this Court do one of the following:

1.	A. Reverse the current judgment,

B. Grant leave for a trial amendment, and

C. Enter a judgment that:

1. Holds Brewer Leasing liable,

2. Clarifies which portions of the 2009 judgment are set aside and which portions are undisturbed, and

3. Finalizes the relief granted in the Agreed Interlocutory Order; or

2.	A. Reverse the current judgment,

B. Enter a judgment that:

1. Holds Brewer Leasing liable,

2. Clarifies which portions of the 2009 judgment are set aside and which portions are undisturbed, and

3. Finalizes the relief granted in the Agreed Interlocutory Order; or

3.	Grant a new trial on the limited issues of Brewer Leasing's liability for 100% driver negligence, ratification of gross negligence, and fraud; or

4. Grant a new trial on all issues.

The Patterson family's motion was overruled by operation of law, and they timely appealed.

## THIS APPEAL

The Patterson family raises two issues here:

1.	"Is the owner of an unleased tractor and trailer liable when the driver is found negligent and 100% at fault?"

21

2.      "May a trial court summarily enter judgment denying all relief for a properly plead fraud claim without a motion for summary judgment, evidence, or a trial on the issues?"

Brewer Leasing's appellee's brief states, in its entirely,

Pursuant to Texas Disciplinary Rule 2.02, Brewer Leasing and its new counsel of record notify this court that previous testimony of Mr. Brewer, Mr. Box and Mr. Yovanovic regarding stock ownership in Brewer Leasing was false. The true facts are herein disclosed.

In chronological order, the false testimony was as follows:

1.      March 2009 deposition by Mr. Box, in which he testified that Mr. Brewer owned 100% of the stock in Brewer Leasing (Page 13, lines 11-14). Mr. Box was the general manager of Brewer Leasing.

2.      March 2009 deposition by Mr. Yovanovic, the CPA for Brewer Leasing, in which he testified that Mr. Brewer owned 100% of Brewer Leasing (Page 14, lines 19-21).

3.      March 2009 deposition by Mr. A. B. Brewer in which he testified that he owned 100% of Brewer Leasing (Page 16, lines 17-19).

4.      Trial testimony by Lonnie Box in which excerpts from his deposition were played in August, 2013 (Vol. 4 RR 141).

5.      Trial testimony by Mr. A.B. Brewer in which he testified live that he owned 100% of Brewer Leasing in August, 2013 (Vol, 6 RR70).

Within the last 30 days the stock certificates of Brewer Leasing have been produced to the new counsel; they reflect that prior to January 1, 2008 Mr. Brewer owned 100% of the stock in Brewer Leasing, but that on that date he conveyed all of his stock in Brewer Leasing to Texas Stretch, Inc. Relying on the record of the stock certificates of Brewer Leasing, the aforesaid testimony of Messers. Box, Brewer and Yovanovic was false.

In light of the previous fraudulent concealment of the cocaine level of the driver, Mr. Charles Hitchens, at the time of the accident and now this false testimony about stock ownership of Brewer Leasing, Brewer Leasing stands on its previous briefing in this case as written by prior counsel as contained in the record.

## LIABILITY OF BREWER LEASING

In its first issue, the Patterson family asks us to find that Brewer Leasing is vicariously liable for Hitchens's negligence, despite the jury failing to find that Brewer Leasing was lessee of the truck Hitchens was driving and failing to find that Brewer Leasing had ratified Hitchens's gross negligence.

The Patterson family reasons that, based upon Brewer Leasing's representations and evidence at trial, Brewer Leasing owned the tractor and trailer—both regulated vehicles—and that ownership creates liability. While it acknowledges that liability created by ownership can be shifted to a lessee through a lease, the Patterson family points out that there was no lease produced in discovery or introduced into evidence shifting liability to any other entity. Thus, it contends, Brewer Leasing as "the tractor or trailer owner is vicariously liable as a matter of law to the general public."

The Patterson family also emphasizes that Texas Stretch and Brewer Leasing were owned by the same person, shared officers and employees, operated out of the same office, and—for at least some purposes—operated as one company. Specifically, it cites a Commercial Lines Insurance Policy Declarations

Page entered into evidence identifying, as the insured, "Texas Stretch, Inc. d/b/a Brewer Leasing, Inc." According to the Patterson family, allowing Brewer Leasing to escape liability in this circumstance would thwart the policy goals behind trucking legislation designed to protect the public from accidents, prevent public confusion, set responsibility when accidents occur, and provide for financially responsible defendants. *See* 37 TEX. ADMIN. CODE § 4.11 (Tex. Dep't of Public Safety, Transportation Policy).

The Patterson family further contends that its pleadings were adequate to give Brewer Leasing fair notice that they sought to hold Brewer Leasing vicariously responsible for Hitchens's actions. And it asserts that Brewer Leasing's liability as owner was tried by express or implied consent. Alternatively, it argues that, if the pleadings were inadequate, it was reversible error for the trial court to refuse to grant a trial amendment post-verdict, but before judgment was entered.

The trial "court shall submit the questions, instructions and definitions in [broad form] that are raised by the written pleadings and the evidence." TEX. R. CIV. P. 278. The party seeking to hold a third-party responsible under a respondeat superior theory has the burden of securing a jury finding on that theory if not conclusively established by the evidence. *J&C Drilling Co. v. Salaiz*, 866 S.W.2d 632 (Tex. App.—San Antonio 1993, no pet.) ("Because appellees did not submit

24

any questions necessarily referable to recovery under respondeat superior, and because they did not conclusively establish or even raise a fact issue that Gonzales was acting in the course and scope of his employment, the judgment against J & C cannot rest on the theory of respondeat superior."); *Hooper v. Torres*, 790 S.W.2d 757, 759 (Tex. App.—El Paso 1990, writ denied) ("It was incumbent upon the party with the burden on the issue to request a correct issue which was raised by the evidence and obtain a favorable answer in order to prevail upon that part of the case . . . .").

"Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." TEX. R. CIV. P. 279; *Robertson v. Odom*, 296 S.W.3d 151, 159 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("Robertson did not submit a properly-worded question, and did not request a jury submission on agency or respondeat superior, in support of his claim that Odom was vicariously liable for Barnes's misrepresentation[;] . . . . Therefore, he has waived any complaint about the failure to submit Odom's vicarious liability to the jury.").

The Patterson family's brief argues:

3. As owner, Brewer Leasing never leased either vehicle.

There is no written lease from Brewer Leasing of the Heil trailer or Peterbilt tractor, either in discovery or in evidence. If either vehicle was leased, a written lease with precise and detailed provisions is required by both federal and state law. 49 USC 10927,

25

11107, and 14102; 49 CFR 376.11, 1057; 37 Tx. Administrative Code 4.11. If an owner rents the vehicle then the owner is not liable, but Brewer Leasing never availed itself of this relief. 49 USC 30106.

4. Ownership without a lease equals liability.

The only entity with any legal connection to the Peterbilt tractor or Heil trailer on the date of the collision is Brewer Leasing. Therefore Brewer Leasing is liable for the collision.

This argument rests upon three premises, i.e., (1) the evidence conclusively established that Brewer Leasing owned the tractor and trailer Hitchens was driving (or, alternatively, that Brewer Leasing is estopped from arguing that it did not own the tractor and trailer), (2) there was no written lease shifting liability for Hitchens's action to a third party, and (3) without a written lease transferring control and liability to a third party, Brewer Leasing is vicariously liable for Hitchens's actions as a matter of law. Thus, according to the Patterson family, its failure to secure a jury finding that Brewer Leasing was the lessee is of no matter because judgment should have entered against Brewer Leasing as the owner of the unleased tractor and trailer.

This argument erroneously assumes that, absent a valid written lease to Texas Stretch in evidence, no lease agreement exists for purposes of shifting liability away from Brewer Leasing as owner of the tractor and trailer.

As the Patterson family acknowledges, under federal law, the owner of a vehicle may shift liability to a lessee that operates the vehicle:

§ 30106. Rented or leased motor vehicle safety and responsibility

26

(a) In general.—An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if–

(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and

(2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106.

But the Patterson family emphasizes that, by statute, a lease that shifts liability from the owner of equipment to a carrier must be in writing and contain certain information about parties' responsibilities. 49 C.F.R. § 376.11 ("There shall be a written lease . . . . ); *Id*. § 376.12 (setting forth requirements for lease); 37 TEX. ADMIN. CODE §4.11(a) (incorporating, by reference, Title 49, Code of Federal Regulations). Thus, it insists, because there was no written lease in evidence shifting liability away from Brewer Leasing, there was no lease as a matter of law and liability stays with Brewer Leasing.

However, several courts have considered and rejected the argument that noncompliance with the regulation requiring that every lease be in writing renders such lease ineffectual. For example, in *Shimko v. Jeff Wagner Trucking, LLC*, the federal district court recognized that testimony about an oral lease agreement created a fact issue about the existence of that lease, despite its violating the "in

27

writing" requirement of 49 C.F.R. § 376.11 (the same section relied upon by the Patterson family):

> A more difficult, factual question is whether Shimko "leased" the equipment back to defendants under the regulations. Certainly, no formal, written lease existed in which *Shimko* granted use of the truck and trailer to *defendants*. However, "lease" is a term of art under the Truth–in–Leasing regulations and is defined as "[a] contract *or arrangement* in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation." 49 C.F.R. § 376.2(e) (emphasis added). The *Bonkowski* court held that an informal oral arrangement can, therefore, constitute a "lease" subject to the regulations. 2004 WL 524723, at *3 ("The arrangement, as described and documented at trial, met [the definition of 'lease.'] . . . Because the agreement was entirely oral, it violated the regulations."). In its previous opinion granting Shimko leave to amend his complaint, this court agreed. (See Mar. 10, 2014 Opinion & Order (dkt.# 29) 5–6.)
>
> Defendants contend that there was no informal leaseback arrangement. . . . Of course, Shimko has offered his own sworn testimony that directly contradicts defendants' on key facts, and the court must credit Shimko's version at summary judgment, as well as draw all reasonable inferences in his favor. . . . Crediting Shimko's testimony, a reasonable trier of fact could certainly find that the parties had "arranged" a *de facto* "leaseback" of the truck and trailer by Shimko to defendants for use in their motor carrier business.

No. 11-cv-831-wmc., 2014 WL 7366190, at *4 (W.D. Wisc. Dec. 24, 2014); *see*

*also Luizzi v. Pro Transport, Inc.*, No. 02-CV-5388(CLP), 2013 WL 3968736, at

*20 (E.D.N.Y., July 31, 2013) (rejecting argument that noncompliance with §

376.12(b) renders lease unenforceable); *Hunt v. Drielick*, 852 N.W.2d 562, 569 n.8

(Mich. 2014) ("Specifically, 49 C.F.R. § 376.11 and 49 C.F.R. § 376.12 require

that if a semi-tractor owner leases its equipment to a carrier, a written lease agreement must be executed[;] . . . . However, the fact that no written lease was entered into in this case does not preclude the trial court on remand from concluding that a lease was in fact entered into. *See Wilson v. Riley Whittle, Inc.*, 701 P.2d 575 (Ariz. Ct. App. 1984) (explaining that "the absence of a written trip lease is legally irrelevant")").

At trial, Mr. Brewer testified that Texas Stretch was operating the truck on the day of the accident, under a lease from Brewer Leasing:

> "Brewer Leasing was not operating the truck. Texas Stretch was. And Brewer Leasing just leased the truck to Texas Stretch."

> "Brewer Leasing was a leasing company, leased the equipment to Texas Stretch."

> . . . .

> Q. Right. Your goal, as I understand it, was to put all assets into Brewer Leasing and have all equipment titled to Brewer Leasing, correct?

> A. Yes, sir.

> Q. On the date this accident occurred, who was the operator of the vehicle?

> A. Texas Stretch.

> Q. Who employed the driver?

> A. Texas Stretch.

> Q. Who did all the hiring for drivers?

> A. Texas Stretch.

29

Q. Who dispatched?

A. Texas Stretch.

Q. So Mr. Hitchens would receive a dispatch from Texas Stretch to go pick up a load, correct?

A. Yeah, he was dispatched, he was paid through Texas Stretch.

Mr. Brewer testified at trial that he was "pretty sure" there was a written lease under which Brewer Leasing leased the equipment to Texas Stretch.

Who owned and operated the truck and trailer was a hotly disputed at trial, and this testimony is some evidence that the equipment was leased from Brewer Leasing to Texas Stretch. Because the lack of a written lease in evidence does not conclusively negate the existence of a lease, the Patterson family did not conclusively establish Brewer Leasing's liability as the owner of *unleased* equipment. Accordingly, the theory that Brewer Leasing is vicariously liable for Hitchens's actions as an owner was waived by the Patterson family's failure to secure a jury submission about the existence or nonexistence of a lease. *See, e.g., Jerry L. Starkey, TBDL, L.P. v. Graves*, 448 S.W.3d 88, 102 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (theory not conclusively established was waived by failure to request submission to the jury).

We overrule the Patterson family's first issue.

# FRAUD

In its second issue, the Patterson family argues that the trial court erred by entering judgment on its fraud claim. It notes that it "plead a claim for monetary relief for fraud in addition to bill of review relief," but was deprived of the opportunity to try the fraud claim. We agree.

The Patterson family's petition sets forth the following fraud claim:

> Brewer Leasing's actual, constructive, and extrinsic fraud, and wrongful acts (including all acts listed in paragraph 27) also proximately caused damages to the Patterson family, including but not limited to expenses incurred that would not have been incurred had the fraud not occurred. In addition to obtaining relief in their Bill of Review, in accordance with Texas case law the Patterson family seeks a recovery of these actual damages.

At the pre-trial hearing, there was an extensive discussion about this claim. The Patterson family argued that it needed to introduce exhibits to support its claim, while Brewer Leasing argued that the evidence did not support a fraud claim. The trial court expressed doubt that the Patterson family's theory was valid as a fraud claim and opined that the theory was more suited to a request for sanctions.

Ultimately, the trial court ruled that the fraud case would be disposed of separately:

> THE COURT: Well, it's something else, but it is not a fraud claim. And, if you can convince me otherwise, then we'll sever it, but we're going to try the wreck in your 15 hours, I think.

31

The trial court excluded any evidence that was related to just the fraud claim. Later, Brewer Leasing's attorney verified that the fraud case was not being tried:

> [Brewer Leasing's counsel]: Well, just for clarification, Judge, fraud is not going to be tried as a part of this automobile wreck and wrongful death case?
>
> THE COURT: Uh-huh. I think that's right.

At trial, Brewer Leasing continued to object to exhibits related only to the Patterson family's fraud claim, because they were "outside the scope of what this trial is about."

The Final Judgment expressly disposes of all claims against Brewer Leasing,

> ORDERED, ADJUDGED AND DECREED that Plaintiffs shall Take Nothing from Defendant and Judgment shall be entered against the Plaintiffs as to all of their claims against Brewer Leasing, Inc. and Defendant, Brewer Leasing, Inc. is hereby dismissed, acquitted and fully discharged from all liability to the Plaintiffs.

Generally, any independent claim not submitted to the jury is waived. *Gulf States Util. Co. v. Low*, 79 S.W.3d 561, 571 (Tex. 2002); *see also Ramos v. Frito-Lay, Inc.*, 784 S.W.2d 667, 668 (Tex. 1990) ("If an entire theory were omitted from the charge it would be waived; and Frito–Lay would indeed have no duty to object.").

The trial court has broad discretion to sever, *see* TEX. R. CIV. P. 41, or order separate trials on certain claims. TEX. R. CIV. P. 174(b); *Allstate Ins. Co. v. Hunter*, 865 S.W.2d 189, 191 (Tex. App.—Corpus Christi 1993, no pet.). The trial court

32

expressed its intention to do so here, telling the parties pretrial (as well as in ruling on objection during trial) that it would not try the Patterson family's fraud claim with its wrongful death claim. And, while the court expressed skepticism about whether the Patterson family had a cognizable fraud claim, the court did not purport to dispose of this claim as a matter of law after affording the Patterson family an opportunity to present evidence either in a summary-judgment proceeding or trial.

After the trial court entered a final, take-nothing judgment, the Patterson family filed a motion for JNOV and new trial, complaining that the trial court should not have entered judgment on its fraud claim. Because the trial court's final judgment disposed of an unresolved claim, we sustain the Patterson family's second issue, reverse the trial court's judgment and remand for consideration of its fraud claim.

## CONCLUSION

We reverse the trial court's judgment on the Patterson family's fraud claim and remand that claim for further proceedings. We affirm the remainder of the trial court's judgment.

## OPINION ON REHEARING

The Patterson family filed a motion for rehearing of the Court's opinion on two grounds: "(1) the Court's opinion erroneously fails to hold Brewer Leasing

liable as the undisputed owner of the Heil trailer with no testimony of any oral lease to Texas Stretch, and (2) the Court's opinion reverses statutory law, the burden of proof, and incorrectly construes cited case authorities with respect to any oral lease of the Peterbilt tractor, thereby erroneously allowing an oral lease to evade liability."[3]

As noted in the Court's original opinion, the Patterson family requested only two jury questions related to Brewer Leasing's liability be submitted to the jury. These questions went to the Patterson family's theory of liability against Brewer Leasing that it was responsible, as the leasee and operator of the tractor, for the driver Hitchins's conduct. In contrast, Brewer Leasing argued that it owned the tractor, but that it had leased it to Texas Stretch, making Texas Stretch instead liable as the operator. The jury accepted Brewer Leasing's theory, and found against the Patterson family on both counts, answering (1) "no" to the question of whether "the tractor driven by Charles Hitchens on June 15, 2006 was leased to Brewer Leasing," and (2) "no" to whether "Brewer Leasing, Inc. ratified or approved the gross negligence of Charles Hitchens."

Given these two negative findings, the Patterson family then argued to the trial court—and on appeal—that, if the tractor was *not leased* to Brewer Leasing as Brewer Leasing contended, Brewer Leasing was nonetheless liable for Hitchens's

---

[3]    Brewer Leasing filed a response that does not cite any authority, but generally agrees with the Patterson family.

actions as a matter of law because (1) Brewer Leasing *owned* the tractor and trailer (rather than being the leasee/operator), and (2) there was no written lease shifting liability from it as owner to a different operator. They asserted in their appellants' brief that this result was mandated by both federal and state law:

> There is no written lease from Brewer Leasing of the Heil trailer or Peterbilt tractor, either in discovery or in evidence. If either vehicle was leased, a written lease with precise and detailed provisions is required by both federal and state law. 49 USC 10927, 11107, and 14102; 49 CFR 376.11, 1057; 37 Tx. Administrative Code 4.11. If an owner rents the vehicle then the owner is not liable, but Brewer Leasing never availed itself of this relief. 49 USC 30106. . . . Ownership without a lease equals liability.

This same argument forms the basis for their motion for rehearing. They argue that (1) the trial evidence that Brewer Leasing had leased its *tractor* to another entity to operate is legally irrelevant to the analysis absent a written lease complying with federal regulations, and (2) there is no evidence that Brewer Leasing had leased the *trailer* to another entity, leaving liability with its owner, Brewer Leasing.

We reject these arguments because the first is legally incorrect and the second is factually incorrect.

### 1. Written Lease requirement

The Patterson Family does not dispute that there was some evidence that Brewer Leasing had leased the tractor to Texas Stretch. But it relies on 49 C.F.R. §§376.11–12 and 37 TEX. ADMIN. CODE § 4.11 to argue that evidence is legally

35

irrelevant because federal and state law impose strict *written* lease requirements. *See* 49 C.F.R. §376.11 ("the authorized carrier may perform authorized transportation in equipment it does not own only under the following conditions: (a) Lease. There shall be a written lease granting the use of the equipment and meeting the requirements contained in § 376.12"); *id* § 376.12 (setting forth numerous requirements for a written lease, including that it be in writing, signed by the parties, specify a duration, transfer to the lessee exclusive possession and responsibilities, and specify compensation); 37 TEX. ADMIN. CODE ANN. § 4.11 (incorporating certain provisions of the Federal Motor Carrier Safety Regulations, Title 49, Code of Federal Regulations). The Patterson family's rehearing motion also seeks to distinguish the numerous cases the Court's opinion cited for the proposition that "several courts have considered and rejected the argument that noncompliance with the regulation requiring that every lease be in writing renders such lease ineffectual." According to the Patterson family, these cases are inapposite because the non-written leases in those cases were permitted to shift responsibility to *create* liability under the lease, rather than shift responsibility to avoid it, as in this case.

In May of 2015, however, the Texas Supreme Court recognized that 49 C.F.R. §§ 376.11–12, which impose the written lease requirements under federal law that the Patterson family relies upon, are *not* within the federal regulations

36

adopted by Texas under section 4.11 of the Texas Administrative Code. *Gonzalez v. Ramirez*, 463 S.W.3d 499, 503 (Tex. 2015). Accordingly, the supreme court expressly "disapprove[d] of prior Texas cases to the extent they have found motor-carrier liability under the Texas Regulations based on duties created by Part 376 of the Federal Regulations."[4] *Id*. We thus reject the Patterson's family's argument that the lack of a written lease complying with federal regulations renders Brewer Leasing liable as a matter of law as the owner of the tractor.

## 2. The Trailer

The Patterson family also argues "Brewer Leasing is liable as the undisputed owner of the never leased Heil trailer." They contend that even if the evidence that Texas Stretch leased the tractor from Brewer Leasing is sufficient to shift liability, Brewer Leasing is liable because there is no evidence that it leased the trailer attached to the tractor to Texas Stretch. Preliminarily, we note that the Patterson family cites no authority, and we have located none, holding the owner of a trailer being pulled by another company's leased tractor vicariously liable for the

---

[4] The supreme court also rejected the argument that the federal regulations applied in *Gonzalez* despite not being adopted in Texas, reasoning that the federal regulations themselves expressly limit their applicability to "interstate commerce." 463 S.W.3d at 502 ("No evidence suggests that Gonzalez hired Garcia to transport property across state lines at any point. Therefore, the Federal Regulations do not apply.). The same is true here, as Hitchens was transporting cargo from the Fayette Power Plant located in La Grange, Texas to a facility in Cleveland, Texas.

negligence of the driver (who is employed by the tractor lessee) solely by virtue of owning the trailer.

In any event, this is not an issue that was submitted to the jury, and we disagree that the evidence conclusively establishes that the trailer was not leased to Texas Stretch, Hichens's employer. A.B. Brewer, the owner of Texas Stretch and Brewer Leasing, testified that "Brewer Leasing was a leasing company, leased the equipment to Texas Stretch." Lonnie Box, the General Manager of Brewer Leasing and Texas Stretch, similarly testified:

> A. Brewer Leasing was a company that was formed as an asset company.
> Q. As a what?
> A. As a leasing, asset leasing company.
> Q. Asset company, okay.
> A. It was to lease the equipment, whether it be *tractors or trailers*, to other trucking companies or just various companies that needed equipment. *Texas Stretch was to lease all its equipment from Brewer Leasing*.

This testimony raised a fact issue at trial as to whether Brewer Leasing leased the trailer to Texas Stretch. Accordingly, we also reject the Patterson family's second argument on rehearing. We deny appellants' motion for rehearing.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.