

# NUMBER 13-22-00610-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**AVG FITNESS TXOK, LLC,**                                   **Appellant,**

**v.**

**CRESTA DEVELOPMENT COMPANY
AND RBR REAL ESTATE HOLDINGS, LLC,**           **Appellees.**

---

### On appeal from the 440th District Court
### of Coryell County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Contreras**

This is an appeal of a summary judgment dismissing claims made by appellant AVG Fitness TXOK, LLC (AVG) against appellees Cresta Development Company (Cresta) and RBR Real Estate Holdings, LLC (RBR). By two issues on appeal, AVG argues: (1) the trial court erred by denying its motion to continue the summary judgment

hearing to allow it to conduct a deposition; and (2) summary judgment was improper because there were genuine issues of material fact raised by the evidence. We affirm.[1]

## I.  BACKGROUND

This case involves a Gold's Gym fitness center in Copperas Cove which was built by Cresta's subsidiary, Cresta Construction Company. In 2018, appellees sold this property and several others to AVG pursuant to an "Agreement for Purchase and Sale." The agreement stated in pertinent part:

> 5.4. Independent Examination. Purchaser [AVG] hereby acknowledges that, except as provided in Section 7.1 or in any Seller Closing Document, Purchaser is relying upon its own independent examination of the Properties and all matters relating thereto and not upon the Documents and/or any statements of Seller [appellees] or of any officer, director, employee, agent, broker, manager or attorney of Seller with respect to acquiring the Properties. *Except as provided in Section 7.1*, Seller shall not be deemed to have represented or warranted the completeness or accuracy of any studies, investigations and reports heretofore or hereafter furnished to Purchaser. The provisions of this Section 5.4 shall survive Closing and/or termination of this Agreement.
>
> . . . .
>
> 7.1. Seller's Representations. Seller represents and warrants that the following matters are true and correct as of the Effective Date and the Closing Date.
>
> > . . . .
> >
> > 7.1.8. Structural Defects. To Seller's knowledge, no structural defects exist in any Building (as defined in the Leases[2]) on any of the Properties.
>
> 7.2. Seller's Knowledge. For purposes of this Agreement and any document delivered at Closing, whenever the phrases "to the best of Seller's knowledge," or the "knowledge" of Seller or words of similar import are used, they shall be deemed to refer to the current, actual, conscious knowledge

---

[1] This appeal was transferred to this Court from the Tenth Court of Appeals in Waco by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] A lease form was attached as an exhibit to the agreement; however, it does not define "structural defect."

only, and not any implied, imputed or constructive knowledge, without any independent investigation having been made or any implied duty to investigate, of Brian Zelman, and Seller represents that Mr. Zelman is the individual with the primary responsibility for overseeing the operation and sale of the Properties. Such individual shall have no personal liability hereunder.

. . . .

7.4. <u>Survival</u>. The express representations and warranties of Seller made in this Agreement shall not merge into any instrument or conveyance delivered at the Closing; provided, however, that any action, suit or proceeding with respect to the truth, accuracy or completeness of such representations and warranties shall be commenced, if at all, on or before the date which is six (6) months after the date of the Closing and, if not commenced on or before such date, thereafter such representations and warranties shall be void and of no force or effect.

. . . .

8.2. <u>Purchaser's Acknowledgment</u>. Purchaser acknowledges and agrees that, *except as expressly provided in Section 7.1 of this Agreement* or the Seller Closing Documents, Seller has not made, does not make and specifically disclaims any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning or with respect to (a) the nature, quality or condition of the Properties, including, without limitation, the water, soil and geology, . . . (e) the habitability, merchantability or fitness for a particular purpose of the Properties, or (f) any other matter with respect to the Properties . . . . Purchaser further acknowledges and agrees that, *except as expressly provided in Section 7.1* or in any Seller Closing Document, having been given the opportunity to inspect the Properties, Purchaser is relying solely on its own investigation of the Properties and not on any information provided or to be provided by Seller. Purchaser further acknowledges and agrees that, *except as expressly provided in Section 7.1* or in any Seller Closing Document, any information provided or to be provided with respect to the Properties was obtained from a variety of sources and that Seller has not made any independent investigation or verification of such information. Purchaser further acknowledges and agrees that, *except as expressly provided in Section 7.1 of this Agreement* or in any Seller Closing Document, and as a material inducement to the execution and delivery of this Agreement by Seller, the sale of the Properties as provided for herein is made on an "AS IS, WHERE IS" CONDITION AND BASIS "WITH ALL FAULTS." Purchaser acknowledges, represents and warrants that Purchaser is not in a significantly disparate bargaining position with respect to Seller in connection with the transaction contemplated by this Agreement;

that Purchaser freely and fairly agreed to this acknowledgement as part of the negotiations for the transaction contemplated by this Agreement. Notwithstanding anything herein to the contrary, Seller shall in no event have any liability for breach of any representation, warranty, indemnity or covenant set forth in this Agreement or in any closing document in excess of two percent (2%) of the Purchase Price of the affected Property, in the aggregate.

(Emphasis added.)

On December 8, 2021, AVG filed suit against appellees alleging that, "[w]ithin the last two years, [AVG] discovered significant defects" in the subject property.[3] AVG asserted that both appellees materially breached the agreement because they knew of these "defects . . . prior to execution of the Agreement" but failed to disclose them. The petition further alleged that AVG "did not know and could not have known about the latent construction defects caused by Defendants' conduct until in or around October 2020." Based on these factual allegations, AVG also raised claims of fraudulent misrepresentation and negligent misrepresentation against both appellees.[4]

Appellees filed an answer generally denying AVG's allegations on January 10, 2022. On May 19, 2022, appellees filed an amended answer asserting affirmative defenses, including contractual waiver and release. The amended answer alleged in part that the misrepresentation claims are barred because AVG "purchased the property at issue on an 'AS IS, WHERE IS' CONDITION AND BASIS 'WITH ALL FAULTS' and

---

[3] Specifically, AVG argued: (1) a "stone cladding veneer" installed at the property is "cracking and fails to adhere to the structure"; (2) "[t]he stone cladding is discolored and dislodged"; (3) "[t]he grout of the cladding is pitted and gapped with missing grout"; (4) "[t]he cladding is separating from the structure at the roof area"; (5) "[t]he roof, and the crickets thereon[,] are not properly sloped and crickets were not installed at the HVAC equipment or skylight pads"; (6) "the roof scuppers are not properly flashed"; (7) "there is a lip in the scupper/roof transition that creates a negative slope at each scupper"; and (8) "roofing material improperly covers many scuppers."

[4] AVG's suit also named Cresta Construction Company as well as subcontractors Jabeau Corporation and Monterrey Construction LLC, as defendants. Following the rendition of summary judgment, the claims against those defendants were severed into a different cause number. Those defendants did not join in appellees' summary judgment motion and are not parties to this appeal.

4

agreed to multiple disclaimers of reliance."

On July 6, 2022, appellees filed a motion for traditional summary judgment arguing: (1) the breach of contract claim is "time barred by the terms of the agreement"; (2) there was no breach because the alleged defects were latent; (3) the terms of the agreement conclusively show that AVG did not justifiably rely on any representations; and (4) AVG's pleadings conclusively show that AVG did not justifiably rely on any representations. Attached to the motion was an affidavit by Brian Zelman, who stated he is the Vice President of Development at TRT Holdings, Inc., Cresta's parent company, and in that capacity, he was "assigned to negotiate" the agreement "on behalf of [appellees]." Zelman averred that: (1) the agreement "was the result of arm's length negotiations between [appellees] and AVG"; (2) AVG was a "sophisticated real estate investment company" and was represented in the negotiations by an "industry leading broker specializing in the acquisition and disposition of [h]ealth [c]lubs"; (3) at the time of the agreement, he had "no knowledge of any structural defects, latent or otherwise[,] at the subject property"; and (4) as set forth in the agreement, appellees "did not undertake any independent investigation to determine if there were structural defects at the time of clos[ing]." A copy of the agreement was attached to the affidavit.

On August 1, 2022, AVG filed a "Motion to Deny or Continue [Appellees'] Traditional Motion for Summary Judgment" arguing that appellees (1) failed to provide "substantive responses" to written discovery requests and (2) failed to produce Zelman for deposition prior to the deadline for responding to the summary judgment motion. On August 4, 2022, AVG filed a response to the summary judgment motion arguing that the evidence generated material fact issues as to its claims. The response included affidavits

5

by AVG's counsel, its manager, and its Vice President of Property Management. Appellees filed a reply to the response.

After a hearing on August 11, 2022, the trial court rendered orders granting appellees' summary judgment motion, awarding appellees $22,949.50 in attorney's fees, and denying AVG's "Motion to Deny or Continue." This appeal followed.

## II. DISCUSSION

### A. Summary Judgment

By its second issue, which we address first, AVG contends the trial court erred by granting appellees' summary judgment motion because there were disputed issues of material fact with regard to its claims, and because appellees did not conclusively establish their entitlement to judgment as a matter of law.

#### 1. Standard of Review

A movant for traditional summary judgment has the burden to establish that no genuine issue of a material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). If the movant meets its burden, "the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the non-movant produces more than a scintilla of evidence to raise a fact issue on the challenged elements, then summary judgment is improper. *Amedisys*, 437 S.W.3d at 511; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms. Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

6

Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010).

We review summary judgments de novo. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). The evidence is viewed in the light most favorable to the non-movant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). When a trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). "Issues not expressly presented to the trial court by written motion, answer[,] or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c).

### 2. Applicable Law

A plaintiff asserting a breach-of-contract claim must prove: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 (Tex. 2018).

A plaintiff asserting a claim for fraudulent misrepresentation must prove: "(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). "The fourth element has two requirements: the plaintiff

must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018).

A plaintiff asserting a claim of negligent misrepresentation must prove: (1) a representation is made by the defendant "in the course of his business" or in a "transaction in which he has a pecuniary interest"; (2) the defendant "supplies false information for the guidance of others in their business transactions"; (3) the defendant "fails to exercise reasonable care or competence in obtaining or communicating the information"; and (4) the plaintiff suffers pecuniary loss "caused to them by their justifiable reliance upon the information." *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Ints.*, 991 S.W.2d 787, 791 (Tex. 1999) (quoting RESTATEMENT (SECOND) OF TORTS § 552(1)). The "false information" contemplated in a negligent misrepresentation case must be a misstatement of an existing fact rather than a promise of future conduct. *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 379 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

### 3. Breach of Contract

In their summary judgment motion, appellees first argued that they are entitled to judgment as a matter of law on AVG's breach of contract claim due to paragraph 7.4 of the agreement, which states that "any action, suit or proceeding with respect to the truth, accuracy or completeness of [the express representations and warranties made by appellees in the agreement] shall be commenced, if at all, on or before the date which is six (6) months after the date of the Closing."[5] It is undisputed that AVG filed suit more

---

[5] Paragraph 7.4 is entitled "Survival" and the parties refer to it as a "survival clause." Ordinarily,

than six months after the closing date. Thus, appellees contended that AVG's breach of contract claim was barred.[6]

In its response, AVG argued that summary judgment would not be proper on this ground because there is a "triable issue of material fact" as to whether paragraph 7.4 is unenforceable "as a result of representations made by [appellees] to fraudulently induce [AVG] to enter the Agreement." AVG pointed to the allegations made in its petition that appellees "deliberately remained silent and did not disclose [their knowledge of defects]," thereby inducing AVG to "unknowingly purchase the Property despite significant construction defects." In support of this contention, AVG attached an affidavit by Kammie Hertz, its vice president of property management, stating in relevant part:

3.    . . . I have served as the property manager for the [subject property] and the point of contact for the tenant occupying the property (the "Tenant") since AVG purchased the property in May 2018. . . .

4.    The property was already occupied by the Tenant when it was purchased by [AVG] and AVG became the lessor under the Tenant's lease upon acquisition of the property.

5.    In or around November 2020, the Tenant contacted me and informed me that there were serious issues with the condition of the Property, including the failure of external stone veneer and substantial roof

---

"survival clause" refers to a contractual provision stating that certain other provisions remain enforceable despite the termination or expiration of the contract in general. *See, e.g.*, *Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007, 1025 (S.D. Tex. 2018); *In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 364 (Tex. App.—Beaumont 2008, orig. proceeding). Paragraph 7.4, on the other hand, is more akin to a contractual limitations provision, which is generally prohibited by statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.070(a) ("Except as provided by Subsection (b) [concerning an agreement for the sale of a business entity with consideration of $500,000 or more], a person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state."). Appellees point out in their brief that AVG did not raise § 16.070 as a reason to deny summary judgment in the trial court. *See* TEX. R. CIV. P. 166a(c). For purposes of this analysis, we assume but do not decide that paragraph 7.4 is enforceable notwithstanding this statute.

[6] Appellees did not argue in their summary judgment motion, nor do they argue on appeal, that paragraph 7.4 bars AVG's misrepresentation claims. Accordingly, summary judgment on those claims would not have been proper on that basis. *See id.*

9

leaks (the "Defects"). . . .

6.    In August 2021, as part of [AVG's] efforts to address the Defects, the Tenant agreed to provide [AVG] with documents and information in its possession regarding the construction of the building at the Property . . . , including documents related to the Defects.

7.    On September 13, 2021, the Tenant sent an email to [AVG] with a link to documents and files related to the Property. . . .

9.    Included in the documents provided to [AVG] by the Tenant on September 13, 2021, was an eighteen (18) page report reflecting an inspection of the roofing system on the building at the Property (the "Roof Report"). The Roof Report is dated June 28, 2017 (nearly one year prior to when [AVG] purchased the Property) and was created by "CentiMark Roof Systems" and is addressed to "Cresta Construction." The Roof Report includes twenty-eight (28) photographs—each labeled "Defect Photo"—reflecting the condition of the roofing system on the building on the Property as of the date of the report. . . .

10.    Upon receipt of the Roof Report, I reviewed [AVG's] books and records related to the purchase of the Property as those records are kept in the normal course of [AVG's] business to determine if a copy of the Roof Report had been provided to [AVG] prior to its purchase of the Property. The Roof Report was not in [AVG's] books and records as they were kept in the normal course of business prior to September 13, 2021. Based on my review of [AVG's] books and records related to the Property, I can confirm that there is no indication that [AVG] received the Roof Report prior to September 13, 2021.

A copy of the "Roof Report" was attached to the affidavit.[7]

---

[7] The report contains twenty-eight "Defect Photos" which, according to their captions, depict the following: (1) "[m]issing metal counter flashing, and sealant not applied correctly"; (2) "[i]ncorrect sealant used and random areas of deficient sealant observed"; (3 and 4) "[s]ealant missing and areas where it was applied there were widespread voids"; (5) "[e]xisting roof to wall flashing failing"; (6) "[p]unctures tears and abuse not properly repair [sic]"; (7) "[e]xisting crickets not installed properly and scupper is high"; (8) "[w]ater ponding area, and scupper not flashed properly"; (9 and 11) "[w]ater ponding area due to main drain scupper installed too high"; (10) "[e]xisting scuppers not flashed properly"; (12) "[m]etal counter clashing not installed properly"; (13) "[p]ipe flashing not installed properly"; (14) "[t]ypical voids and cold welds observed in the seams and multiple patches observed"; (15) "[t]ypical voids and cold welds observed in the curb flashings and multiple patches observed"; (16) "[m]ultiple repairs not properly completed are on the TPO roofing membrane"; (17, 20, and 27) "[o]pen seams"; (18 and 28) "[s]cupper TPO flashing failing"; (19) "[p]ourable sealer no[t] applied properly over existing pitch pans"; (21) "[m]ultiple repairs over TPO roof flashing (widespread)"; (22 and 25) "TPO walk pad not installed properly"; (23) "[p]arapet wall flashing not installed

10

In the section of its petition regarding breach of contract, AVG alleged: "Defendants materially breached the Agreement by failing to disclose the construction defects present in the Property caused by Defendants' negligent and unworkmanlike construction."[8] But AVG identifies no provision of the agreement requiring appellees to disclose construction defects on an ongoing basis. Instead, this claim is based entirely on the allegation that Zelman made a material misrepresentation by stating in the agreement that he knew of no structural defects at the time of the sale, and that he thereby induced AVG into entering the contract. As AVG acknowledges in its discussion concerning its motion to continue, "[w]hen one individual fraudulently induces another to enter into a contract, no contract results because the one who was fraudulently induced gave no real consent to the agreement." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997). Accordingly, accepting the underlying facts of AVG's claim as true, no contract would result, and no breach of contract action would lie. *See Anderson*, 550 S.W.3d at 614; *USAA Tex. Lloyds Co.*, 545 S.W.3d at 502; *Schlumberger*, 959 S.W.2d at 178 (stating that the existence of a valid contract is an essential element of a breach of contract claim)*.* Appellees established their entitlement to judgment as a matter of law on this claim.

### 4.    Justifiable Reliance

In its misrepresentation claims, AVG alleged that appellees "knew of construction[] defects in the building at the Property," and had a duty to disclose that information to AVG prior to the sale, but failed to do so. AVG claimed that appellees either "deliberately

---

properly"; (24) "[p]unctures on the existing TPO roofing membrane"; (26) "TPO roofing membrane seam has been glue[d] instead of welded."

[8] It is undisputed that the particular defendants involved in this appeal were not directly involved in the construction of the property. The reference in AVG's petition to "Defendants' negligent and unworkmanlike construction" apparently concerns the other, severed defendants.

remained silent" regarding the alleged defects (fraudulent misrepresentation) or "did not use reasonable care in communicating with [AVG] with respect to" the alleged defects (negligent misrepresentation). To establish either tort, AVG must show that it justifiably relied on appellee's misrepresentations. *See JPMorgan Chase*, 546 S.W.3d at 653; *McCamish, Martin, Brown & Loeffler*, 991 S.W.2d at 791. In measuring justifiability, we must inquire whether, "given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud[,] it is extremely unlikely that there is actual reliance on the plaintiff's part." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010).

In their summary judgment motion, appellees argued in part that AVG cannot show justifiable reliance because of the disclaimers set forth in paragraphs 5.4, 7.2, and 8.2 of the parties' agreement. A contractual disclaimer of reliance may be enforceable and may negate a subsequent fraudulent inducement claim if the disclaimer is clear, specific, and unequivocal. *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 473–74 (Tex. 2022) (first citing *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 229 (Tex. 2019); then citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 336 (Tex. 2011); then citing *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008); and then citing *Schlumberger*, 959 S.W.2d at 179). Whether a reliance disclaimer is effective in any given case "depends on the contract's language and the totality of the surrounding circumstances." *Id.* Courts consider such factors as whether: (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the

parties dealt with each other at arm's length; (4) the parties were knowledgeable in business matters; and (5) the disclaimer language was clear. *Id.* (citing *Forest Oil*, 268 S.W.3d at 60).

In arguing that the contractual disclaimers are enforceable, appellees pointed to Zelman's affidavit in which he stated that AVG is a "sophisticated" entity represented by an "industry leading broker" and that the agreement was negotiated at "arm's length." *See id.* AVG did not dispute these facts but instead challenged the scope of the disclaimers, noting that each of the disclaimers specifically excluded the representations made in paragraph 7.1—including the statement in paragraph 7.1.8 that "[t]o Seller's knowledge, no structural defects exist in any Building" on the property.[9] We agree with AVG on this point. Paragraphs 5.4 and 8.2 clearly, specifically, and unequivocally disclaim AVG's reliance on representations made in the agreement, and these disclaimers are enforceable in light of the contract's language and totality of the circumstances. *See id.* But the disclaimers also clearly, specifically, and unequivocally carve out the representations in paragraph 7.1 from their purview.[10] Accordingly, justifiable reliance on the representations in paragraph 7.1 was not negated by the disclaimers.

---

[9] In an affidavit attached to AVG's summary judgment response, its manager Arnold Schlesinger averred that the representation in paragraph 7.1.8 "was extremely important to and relied upon by [AVG] in entering into the Agreement because it provided AVG with assurances that the seller of the Property was confirming it was not aware of any construction defects in the Property." Schlesinger further stated:

> [AVG] would not have entered the Agreement absent the express representation by [appellees] that [Zelman] was the individual "with the primary responsibility for overseeing the operation" of the Property because said representation, along with [Zelman]'s position at TRT gave [AVG] assurances that if there were any structural defects at the Property said defects would be known to [Zelman] and disclosed to [AVG] by [appellees].

[10] Appellees attribute great significance to the statements in paragraph 8.2 that "[AVG] is relying solely on its own investigation of the Properties and not on any information provided or to be provided by [appellees]" and that the sale of the property "is made on an 'AS IS WHERE IS' CONDITION AND BASIS 'WITH ALL FAULTS.'" But these disclaimers, like all of the others, were made explicitly subject to the paragraph 7.1 carve-out.

13

Appellees further assert that, even in the absence of an applicable disclaimer, any reliance by AVG on the representations in paragraph 7.1 was unjustifiable as a matter of law under the circumstances. They claim that AVG could not "blindly rely" on those representations because it was given an opportunity to investigate the property's condition. *See JPMorgan Chase Bank*, 546 S.W.3d at 657 (holding that appellee could not "blindly rely" on appellant's representations "when its knowledge, experience, and background called for further investigation"). We disagree. A person may not justifiably rely on a representation "if there are 'red flags' indicating such reliance is unwarranted." *Grant Thornton LLP*, 314 S.W.3d at 923. But here, appellees have pointed to no "red flags" indicating that AVG should have done further investigation before relying on the representations in paragraph 7.1.

Appellees' summary judgment motion additionally argued that justifiable reliance was conclusively negated due to the fact that AVG stated in its petition that the defects were "latent." Appellees observe that, under paragraph 7.2, "Seller's knowledge" is defined as the "current, actual, conscious knowledge" of Zelman and does not include implicit or constructive knowledge. According to appellees, because of this definition and because AVG conceded that the defects were "latent" in their petition, Zelman could not have had actual knowledge of those defects as matter of law. We disagree. To be a judicial admission, a statement in a pleading must be deliberate, clear, and unequivocal. *PPG Indus. v. JMP/Hous. Ctrs. Partners*, 146 S.W.3d 79, 95 (Tex. 2004). AVG alleged in its petition that it "did not know and could not have known about the latent construction defects . . . until in or around October 2020." However, the petition did not state, explicitly or implicitly, that *all* of the defects upon which the lawsuit was based were latent. Even if

it did, the fact that a defect is "latent" does not mean that Zelman could not possibly have had actual knowledge of it at the time of closing, especially given Zelman's position as the "individual with the primary responsibility for overseeing the operation and sale of the Properties." *See Latent*, BLACK'S LAW DICTIONARY (defining "latent" as "concealed; dormant"). AVG's use of the word "latent" in its petition did not negate its allegation that it justifiably relied on the representations in paragraph 7.1.

### 5. "Structural" Defects

Because the disclaimers were not applicable to paragraph 7.1, AVG was entitled to rely on the representations made therein, including the representation in paragraph 7.1.8 that Zelman had no actual knowledge of any "structural defects" at the time of the sale. In another part of their second issue on appeal, appellees note that, if the alleged defects at issue were not "structural," then there could have been no misrepresentation made in paragraph 7.1.8. They argue that "the trial court did not err in concluding that, under the terms of the Agreement, the alleged defects were not 'structural.'" Appellees note that the agreement did not define "structural defect," but they argue the term is not ambiguous and that the court was within its discretion to determine as a matter of law that the alleged defects identified in the "Roof Report" were not "structural." *See Am. Mftrs. Mut. Ins. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003) (noting that, when a contract "is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law").

Appellees did not argue in their summary judgment motion that the misrepresentation claims fail because the alleged defects were not "structural." However, in their reply to AVG's summary judgment response, appellees stated that the "Roof

Report" was "a hearsay document" which, while "showing roof issues," did not "relate to the condition of the Property at [the closing date]" on March 22, 2018. Appellees further argued that the "Roof Report" did not "show[] a structural defect on March 22, 2018," and "did not indicate[] any failure of the roof (which is not load bearing) or to any load bearing structure" in June 2017, when the report was created. In other words, appellees claimed that a report showing non-structural defects existing over one year prior to closing does not tend to establish that the statement in paragraph 7.1.8 (i.e., that Zelman actually knew of no *structural* defects *at the time of closing*) was a misrepresentation.

We agree. Appellees cite *Robertson v. Odom*, in which the plaintiff, a purchaser of property, alleged that the sellers violated the Deceptive Trade Practices Act (DTPA) by failing to disclose the fact that the property had undergone "structural repairs" prior to the sale. 296 S.W.3d 151, 154 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see* TEX. BUS. & COM. CODE ANN. § 17.46(b)(7) (DTPA); *see also* TEX. PROP. CODE ANN. § 8.005(b) (requiring a seller of residential real property comprising not more than one dwelling unit to disclose in writing to the purchaser whether, among other things, the seller is aware of any "Previous Structural or Roof Repair"). The trial court rendered a directed verdict in favor of the seller, and the Fourteenth Court of Appeals affirmed. *Robertson*, 296 S.W.3d at 154–58. The central question was how to interpret the undefined term "structural." The court rejected the plaintiff's expansive reading of this term, which was based on dictionary definitions. *Id*. at 156 (noting that Webster's defines "structural" as "relating to . . . a structure" and "structure" as "something constructed or built"). The court noted that, if it were to adopt this overbroad definition, much of the statute would be rendered meaningless because "any repair to the house—no matter how inconsequential—would

have to be disclosed at the risk of incurring legal liability." *Id.* at 157; *see id.* at 158 ("When possible, we will not interpret one portion of a statute in a manner that renders other parts of it meaningless.").

Instead, the court observed that "the Legislature has consistently defined 'structural,' in the context of residential construction, as referring to 'the load-bearing portion of a residence.'" *Id.* at 157 (first citing TEX. PROP. CODE ANN. § 27.001(7) ("'Structural failure' means actual physical damage to the load-bearing portion of a residence caused by a failure of the load-bearing portion"); and then citing Act of June 2, 2003, 78th Leg., R.S., ch. 458, § 1.01, 2003 Tex. Gen. Laws 1703, 1704 (expired Sept. 1, 2009) (former TEX. PROP. CODE ANN. § 401.002(13)) ("'Structural' means the load-bearing portion of a home.")). The court further noted that "the dictionary itself sets forth a more specific definition when 'structural' is used in the context of a building, that is, 'of or relating to the load-bearing members or scheme of a building as opposed to the screening or ornamental elements.'" *Id.* Accordingly, the court interpreted the term "structural repair," as used in property code § 5.008(b), "as referring to repairs performed on the load-bearing portions of a residence." *Id.* at 157, 158 (noting that, "when construing a statutory word or phrase, we may consider the meaning assigned to the term elsewhere in the act or in another act of similar nature"). The court then concluded that directed verdict was proper because "[t]he evidence introduced at trial conclusively established that the repairs [at issue] did not involve the load-bearing portions of the home." *Id.* at 158.

The instant case is analogous in that it turns on the interpretation of the term "structural." AVG argues that property code § 27.001(7) is inapplicable because it only

defines "structural failure"—not "structural defect"—and because it applies only to residential construction, not commercial construction. It cites two memorandum opinions for the proposition that "the phrase 'structural defect' has long been assigned a broader meaning by Texas courts." *See Old HH, Ltd. v. Henderson*, No. 03-10-00129-CV, 2011 WL 6118570, at \*5 (Tex. App.—Austin Dec. 9, 2011, no pet.) (mem. op.); *Newcomer v. Lawson*, No. 07-99-0012-CV, 1999 WL 694269, at \*5 (Tex. App.—Amarillo Sept. 8, 1999, pet. denied) (mem. op., not designated for publication). We find these cases inapposite. In *Old HH*, the appellee testified that the roof of her house had a "dead valley" with a slope that was insufficient to permit water to run off the roof. 2011 WL 6118570, at \*5. Appellee further testified "that about one year after she purchased the house, several rooms experienced water intrusion as the result of this structural defect." *Id.* The court did not further use the term "structural defect" and the meaning of this term was not in dispute. Similarly, in *Newcomer*—a case with no precedential value, *see* TEX. R. APP. P. 47.7(b)— the court repeatedly used the term "structural defects" but did not analyze its meaning because it was not disputed by the parties. *See* 1999 WL 694269, at \*5–6 (finding evidence legally sufficient but factually insufficient to support damages award).

AVG suggests on appeal that the term "structural defects" is ambiguous and its meaning should be left to the jury because "[t]he construction of an ambiguous contract is a question of fact." *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 950 (Tex. 1990). But AVG did not argue in the trial court that the term is ambiguous. *See* TEX. R. CIV. P. 166a(c). In any event, aside from the inapposite cases mentioned above, AVG cites no authority suggesting any reasonable alternative construction of the term "structural defect," and we find none. *See Coker v. Coker*, 650 S.W.2d 391, 393

(Tex. 1983) ("A contract . . . is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning."). Instead, we find the reasoning in *Robertson* persuasive, and we conclude that, in context of the parties' contract, the term "structural defect" refers exclusively and unambiguously to defects concerning a "load-bearing portion" of a building.

In his affidavit, Zelman stated—as he did in paragraph 7.1.8 of the contract—that he had no actual knowledge of any "structural defects" in the property at the time of the closing. In response, AVG relied on the "Roof Report," but AVG does not explicitly argue that the defects identified in the "Roof Report" constitute "structural defects" such that the report would constitute evidence that Zelman made a misrepresentation in paragraph 7.1.8. We conclude that the "Roof Report" does not constitute such evidence. The "Roof Report" identifies twenty-eight purported defects, but none of them pertain to "load-bearing" elements of the property. Thus, even assuming Zelman actually knew at the time of the closing about all of the purported defects listed in the "Roof Report," his statement in paragraph 7.1.8 that he was aware of no "structural defects" was not a misrepresentation. *See Anderson*, 550 S.W.3d at 614; *Smith*, 288 S.W.3d at 424; *McCamish, Martin, Brown & Loeffler*, 991 S.W.2d at 791.

For the foregoing reasons, the trial court did not err in granting summary judgment in favor of appellees on AVG's misrepresentation claims.

### 5. Attorney's Fees

As part of its second issue, AVG contends that the trial court erred by awarding attorney's fees to appellees. However, its argument is based entirely on the premise that the trial court erred by granting summary judgment. Because we have concluded that the

19

trial court did not so err, we overrule this part of AVG's second issue.

## B.    Motion to Continue

By its first issue, AVG contends the trial court erred by denying its motion to continue the summary judgment hearing to allow it to take the deposition of Zelman.

The trial court may order a continuance of a summary judgment hearing if it appears "from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition." TEX. R. CIV. P. 166a(g). A trial court's ruling on a motion to continue a summary judgment hearing is reviewed for a clear abuse of discretion on a case-by-case basis. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002)). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* To determine whether a trial court abused its discretion, we consider the following nonexclusive factors: (1) "the length of time the case has been on file," (2) "the materiality and purpose of the discovery sought," and (3) "whether the party seeking the continuance has exercised due diligence to obtain the discovery sought." *Id.*

First, regarding the time the case was on file, AVG filed its original petition on December 8, 2021, and appellees first asserted their affirmative defenses—upon which their summary judgment motion is primarily based—in their amended answer dated May 19, 2022. Appellees' summary judgment motion was filed on July 6, 2022, and the hearing was on August 11, 2022. Thus, at the time AVG moved for continuance on August 1, 2022, less than nine months had elapsed since suit was filed and less than three months had elapsed since appellees first pleaded their affirmative defenses.

20

AVG cites *Adi v. Houston Chronicle Publishing Co.*, in which the Fourteenth Court of Appeals observed in a memorandum opinion that "Texas courts have found that denial of a continuance for cases on file for less than eleven months may constitute abuse of discretion." No. 14-01-00213-CV, 2003 WL 61121, at *3 (Tex. App.—Houston [14th Dist.] Jan. 9, 2003, no pet.) (mem. op.) (first citing *Laughlin v. Bergman*, 962 S.W.2d 64, 66 (Tex. App.—Houston [1st Dist.] 1997, pet. denied); and then citing *Verkin v. Sw. Ctr. One, Ltd.*, 784 S.W.2d 92, 96 (Tex. App.—Houston [1st Dist.] 1989, writ denied)). In *Laughlin*, a legal malpractice case, the court found a continuance should have been granted where, though the case "had been on file for eleven months," the parties had agreed after the summary judgment motion was filed to take the deposition of the attorney who was accused of malpractice. *Laughlin*, 962 S.W.2d at 66. The *Verkin* court reached the same conclusion in a landlord-tenant dispute where "the suit had been on file less than three months," "the motion stated sufficient good cause," "the motion was uncontroverted," and "it was the first motion for continuance." *Verkin*, 784 S.W.2d at 96. AVG further notes that, at the time it filed its motion to continue, there was no docket control order in effect, there was no trial date set, and the discovery period provided by rule had not yet expired. *See* Tex. R. Civ. P. 190.3(b)(1)(A)(ii), 194.2; *see also De Anda v. Jason C. Webster, P.C.*, No. 14-17-00020-CV, 2018 WL 3580579, at *5 (Tex. App.—Houston [14th Dist.] July 26, 2018, pet. denied) (mem. op.) (finding trial court erred by denying continuance in case on file for "approximately three months" where "no docket control order had been signed by the trial court nor had a trial date been set").

In response, appellees note that the Texas Supreme Court has affirmed the denial of a continuance in a case where the summary judgment motion was filed less than two

21

months after suit was initiated. *See Joe*, 145 S.W.3d at 160. Appellees also observe that, in *BMC Software*, the Texas Supreme Court held there was no abuse of discretion in the denial of a continuance of a special appearance hearing where the hearing was held seven months after the special appearance was filed. *See BMC Software Belg.*, 83 S.W.3d at 800 (noting that the plaintiff "had ample time to conduct, and did conduct, discovery").

Regarding diligence in obtaining the discovery sought, AVG attached to its motion to continue an affidavit by its counsel attesting that he contacted appellees' counsel on July 25, 2022, and asked to schedule Zelman's deposition, but appellees' counsel declined to make Zelman available prior to the summary judgment hearing. AVG also notes that appellees objected to many of its discovery requests.[11]

Finally, as to the materiality and purpose of the discovery sought, AVG argued in its motion to continue that "[d]iscovery regarding what [Zelman] knew about the condition of the Property and what his role was in 'overseeing the operation' of the Property, if any, is critical" to its misrepresentation claims. Presumably, AVG expected to elicit testimony from Zelman which would establish that he had actual knowledge of structural defects at the time of closing, so as to contradict paragraph 7.4 of the agreement and his own

---

[11] As an illustrative example, RBR provided the following response to one of AVG's requests for production:

> 10.      Produce all Documents, including all communications that reflect Brian [Zelman]'s knowledge regarding any actual, suspected, or alleged Defect at the Property.

> RESPONSE:      [RBR] has conducted a diligent search of its records for communications related to a "structural defect," with specific attention [to] the alleged defect made the basis of [AVG]'s lawsuit, existing in any buildings on the subject property on March 22, 2018 and none were found. To the extent this request seeks more, [RBR] objects because it is overly broad in terms of scope, not limited to the alleged defect at issue in this matter, not limited to the relevant time period at issue in this matter, and unduly burdensome, and not calculated to lead to admissible evidence.

affidavit, and so as to support its misrepresentation claims. However, AVG has never claimed, nor has it provided any proof, that any "structural defects" existed which Zelman could have potentially known about. "A fact is 'material' only if it affects the outcome of the suit under the governing law." *Janaki v. C.H. Wilkinson Physician Network*, 624 S.W.3d 623, 628 (Tex. App.—Corpus Christi–Edinburg 2021, no pet.). AVG has not established that Zelman's deposition would have been material to the outcome of its suit.

Having weighed the relevant factors, we conclude that the trial court did not abuse its discretion in denying AVG's motion to continue. AVG's first issue is overruled.

## III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
19th day of October, 2023.